[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 26, 2005
THOMAS K. KAHN
CLERK

No. 03-15636

D. C. Docket No. 01-00283-CV-2-CAR-5

DAVID JOHNSON,

Plaintiff-Appellee,

versus

TYDUS MEADOWS, Warden, Bostick State Prison,
BOB BARRY, Warden of Care and Treatment, Bostick State Prison,
RICKY JACKSON, Warden of Security, Bostick State Prison,

Defendants-Appellants.

Appeal from the United States District Court
for the Middle District of Georgia

**(July 26, 2005)**

Before DUBINA and FAY, Circuit Judges, and GOLDBERG*, Judge.

_____

*Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by
designation.

DUBINA, Circuit Judge:

In this interlocutory appeal, appellants Tydus Meadows, Warden of Bostick State Prison ("Bostick"), Bob Barry, Warden of Care and Treatment at Bostick, and Ricky Jackson, Warden of Security at Bostick ("the Bostick wardens"), appeal the district court's order denying their motion to dismiss appellee David Johnson's ("Johnson") complaint pursuant to 28 U.S.C. § 1997e(a). The issue presented on appeal is whether the Prison Litigation Reform Act's ("PLRA"), Pub.L. No. 104-134, 110 Stat. 1321 (1996), exhaustion requirement requires a prisoner either to meet timely the administrative deadlines or the good cause standard of Georgia's administrative grievance procedures before filing a federal claim. This issue is one of first impression in our circuit and essentially asks *what* exhaustion requires under the PLRA – simple exhaustion, or something more, such as "proper exhaustion." *See Spruill v. Gillis*, 372 F.3d 218, 228 (3rd Cir. 2004). The question also implies whether there is a procedural default concept within the PLRA's exhaustion requirement. Because we conclude that an untimely administrative grievance does not satisfy the exhaustion requirement of the PLRA, we reverse the district court's order and remand this case with directions that the district court dismiss Johnson's complaint.

# I. BACKGROUND

Johnson, a Georgia state prisoner, originally filed a 42 U.S.C. § 1983 complaint with the district court on August 20, 1999, alleging exposure to hazardous chemicals, harassment by prison officials, and retaliation from prison officials. On February 20, 2001, the district court dismissed that complaint without prejudice for failure to exhaust administrative remedies. Johnson filed an out-of-time administrative grievance in order to satisfy the exhaustion requirement, making similar allegations to those in his federal complaint. The Corrections Department denied his grievance as untimely because the Georgia Prison Inmate Grievance Procedure requires that all grievances be filed "within five (5) calendar days from the date that the prisoner discovers, or reasonably should have discovered, the incident giving rise to the complaint and was able to file the grievance." *See* Ga. Dept. of Corrections S.O.P. IIBOD-0001 (2001). At the appeals level, the agency did not address Johnson's grievance because he untimely filed.

On July 18, 2001, following the denial of his appeal, Johnson filed another federal complaint in which he reiterated his prior complaints and requested monetary damages. The Bostick wardens filed a motion to dismiss pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, arguing that Johnson's complaint

was barred by the statute of limitations because he filed his second federal complaint over two years after the complained of conduct. They also invoked the Eleventh Amendment. Johnson first responded that because he originally filed a timely complaint in 1999, which was dismissed without prejudice in January 2001 to allow him the opportunity to exhaust his administrative remedies, his July 2001 complaint was not time-barred because the statute of limitations period was tolled during his federal suit. Johnson also responded that the Bostick wardens did not have immunity in their official capacities.

The magistrate judge issued a report and recommendation, recommending that the district court grant the Bostick wardens' motion to dismiss. The magistrate judge determined that Johnson's complaint was filed untimely because the statute of limitations was not tolled during the pendency of Johnson's initial complaint and because he failed to show that an inequitable event prevented him from timely filing his complaint. Johnson objected to the magistrate judge's report and moved for reconsideration. The magistrate judge vacated its report, finding that there should have been an equitable tolling of the statute of limitations during the time that Johnson attempted to exhaust by filing the out-of-time grievance after the district court first dismissed his complaint.

The Bostick wardens filed a second motion to dismiss, arguing that Johnson's untimely use of prison grievance procedures meant that he had not exhausted his administrative remedies, stripping the federal court of jurisdiction. They also asserted that Johnson did not attempt to file a grievance before filing his federal complaint and failed to show good cause when filing his untimely grievance. The magistrate judge recommended granting the second motion to dismiss because Johnson never sought permission to file an out-of-time grievance, but the magistrate judge recommended that the dismissal be without prejudice to permit Johnson a final opportunity to file an out-of-time grievance. Johnson objected through an amended response and a motion for reconsideration. The magistrate judge again entered an order vacating the report and recommendation. The magistrate judge subsequently entered a new report and recommendation, granting the Bostick wardens' second motion to dismiss only to the extent that they were being sued in their official capacities. The Bostick wardens objected, claiming that the magistrate judge erred in concluding that Johnson had properly exhausted his administrative remedies before filing suit.

The district court adopted the report and recommendation. The Bostick wardens filed a motion for certification for interlocutory appeal on the following issue: whether the failure of a plaintiff to grieve timely requires a dismissal of a

5

federal suit with prejudice, when the prisoner did not follow internal grievance procedure initially, and upon a subsequent filing of an out-of-time grievance, the prison administrators find no grounds (or good cause) to authorize said out-of-time grievance. The district court granted the motion, and this court granted permission for the Bostick wardens' interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## II. ISSUE

Whether the PLRA's exhaustion requirement, codified in 42 U.S.C. § 1997e(a), requires prisoners to meet timely the deadlines or the good cause standard of Georgia's administrative grievance procedures before filing a federal claim.

## III. STANDARD OF REVIEW

This court reviews *de novo* a district court's interpretation and application of 42 U.S.C. § 1997e(a)'s exhaustion requirement. *Higginbottom v. Carter*, 223 F.3d 1259, 1260 (11th Cir. 2000).

## IV. DISCUSSION

Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 992 (2002). This provision entirely eliminates judicial discretion and instead mandates strict exhaustion, "irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n.6, 121 S. Ct. 1819, 1825 n.6 (2001). Congress intended to afford prison officials time to address grievances internally before allowing a prisoner to initiate a federal lawsuit. *See Porter*, 534 U.S. at 525, 122 S. Ct. at 988. Thus, whatever the precise contours of *what* exhaustion requires, it plainly is procedural in nature:

> While the modifier "available" requires the possibility of some relief for the action complained of . . . , the word "exhausted" has a decidedly procedural emphasis. It makes sense only in referring to the procedural means, not the particular relief ordered. . . . [O]ne "exhausts" processes, not forms of relief, and the statute provides that one must.

7

*Booth*, 532 U.S. at 738-39, 121 S. Ct. at 1824. "In other words, the modifier 'available' in the PLRA means that inmates must exhaust administrative remedies so long as there is the possibility of at least some kind of relief." *Ross v. County of Bernalillo*, 365 F.3d 1181, 1187 (10th Cir. 2001).

Therefore, this court has noted that "when a state provides a grievance procedure for its prisoners, as Georgia does here, an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000). This court has described seven policy reasons for favoring an exhaustion requirement:

> (1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.

*Alexander v. Hawk*, 159 F.3d 1321, 1327 (11th Cir. 1998) (internal quotations omitted).

Mindful of these policies favoring exhaustion, we look to our circuit precedent and our sister circuits' precedent to decide whether an untimely grievance satisfies the exhaustion requirement of the PLRA. Although not directly on point, *Harper v. Jenkin*, 179 F.3d 1311 (11th Cir. 1999), is persuasive. In *Harper*, the prisoner filed an administrative grievance alleging that prison officials violated his rights under the Eighth and Fourteenth Amendments by refusing him needed medical treatment. *Id.* at 1312. The Georgia prison officials denied his grievance because it was untimely. *Id.* The prisoner could have appealed the officials' denial of his grievance, but he acknowledged that the appeal would not be heard because his grievance was untimely. *Id.* Therefore, the prisoner argued that he had exhausted his administrative remedies. *Id.* We disagreed, noting, as did the district court, that the Georgia State Prison Inmate Grievance Procedure "allows the grievance coordinator to waive the time period for filing a grievance if 'good cause' is shown." *Id.* at 1312. "Since [the prisoner] has not sought leave to file an out-of-time grievance, he cannot be considered to have exhausted his administrative remedies." *Id.* We noted that "[i]f we were to accept [the prisoner's] position – that the filing of an untimely grievance exhausts an inmate's administrative remedies – inmates, such as [the prisoner], could ignore the PLRA's exhaustion requirement and still gain access to federal court merely by

9

filing an untimely grievance." *Id.* Therefore, we affirmed the district court's order of dismissal.[1]

Because we have not directly addressed the issue of whether an untimely grievance that is rejected as such by prison officials can satisfy the exhaustion requirement of § 1997(e)a, we look to our sister circuits that have considered the issue. We agree with those circuits that have concluded that an untimely grievance does not satisfy the exhaustion requirement of the PLRA. In a pre-PLRA case, the Fifth Circuit upheld the dismissal of a prisoner's § 1983 suit for failure to exhaust administrative remedies where the inmate's administrative grievance had been dismissed as untimely filed. *Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995). In so deciding, the court reasoned that "[w]ithout the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one, thereby foreclosing administrative remedies and gaining access to a federal forum without exhausting administrative remedies." *Id.*

---

[1] We acknowledge that our discussion in *Harper* on whether an untimely grievance can *ever* serve as a basis for exhaustion under the PLRA is dicta. However, the case has been construed as supporting the application of a procedural default rule in the PLRA context. *See generally Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002); Kermit Roosevelt III, *Exhaustion Under the Prison Litigation Reform Act: The Consequence of Procedural Error*, 52 Emory L.J. 1771, 1782 n.65 (2003) (citing *Harper* as an example of a decision "hint[ing] that a procedural error could create an incurable failure to exhaust").

10

In a case under the PLRA, the Third Circuit found that "Congress's policy objectives will be served by interpreting § 1997e(a)'s exhaustion requirement to include a procedural default component." *Spruill*, 372 F.3d at 230. Relying on its discussion of the PLRA's legislative history, the court noted three Congressional objectives relevant to its inquiry: "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits." *Id.* The court found that "[a]ll three goals are obviously served by a procedural default rule because such a rule prevents an end-run around the exhaustion requirement, and thereby creates an overwhelming incentive for a prisoner to pursue his claims to the fullest within the administrative grievance system." *Id.*

Additionally, in *Ross*, 365 F.3d at 1186, the Tenth Circuit found that the PLRA's exhaustion requirement contains a procedural default rule. The court noted that in the habeas context, the purposes of the exhaustion requirement "would be utterly defeated if the prisoner were able to obtain habeas review simply by letting the time run so that state remedies were no longer available." *Id.*

11

at 1185-86 (quotation omitted).  Reasoning that this same policy applies in the

PLRA context, the court noted that:

> [A]llowing prisoners to proceed to federal court simply because they have filed a time-barred grievance would frustrate the PLRA's intent to give prison officials the opportunity to take corrective action that may satisfy inmates and reduce the need for litigation, to filter out frivolous claims, and to create an administrative record that would facilitate subsequent judicial review.

*Id.* at 1186.  The court found that "[a] prison procedure that is procedurally barred

and thus is unavailable to a prisoner is not thereby considered exhausted."  *Id.*

"Regardless of whether a prisoner goes through the formality of submitting a time-

barred grievance, he may not successfully argue that he had exhausted his

administrative remedies by, in essence, failing to employ them."  *Id.* (quotation

and citation omitted).

Furthermore, in *Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002),

the Seventh Circuit held that "unless the prisoner completes the administrative

process by following the rules the state has established for that process, exhaustion

has not occurred."  The court found that "[a]ny other approach would allow a

prisoner to 'exhaust' state remedies by spurning them, which would defeat the

statutory objective of requiring the prisoner to give the prison administration an

opportunity to fix the problem."  *Id.* at 1023-24.  Acknowledging a merger in the

12

collateral attack and administrative law understandings of exhaustion, the court found that exhaustion under 1997e(a) is administrative only. *Id.* at 1024. Hence, "a prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court; but a prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating." *Id.* The court concluded that "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Id.* at 1025. To hold otherwise, the court stated, "would leave § 1997e(a) without any oomph." *Id.* *See also Giano v. Goord*, 380 F.3d 670, 677 (2d Cir. 2004) (acknowledging that a rule allowing prisoners to circumvent the exhaustion requirement simply by waiting to bring a § 1983 action until their administrative complaints are time-barred would not comport with the purposes of the PLRA). *But see Ngo v. Woodford*, 403 F.3d 620, 631 (9th Cir. 2005) (holding that an untimely administrative appeal suffices to exhaust administrative remedies); *Thomas v. Woolum*, 337 F.3d 720, 723 (6th Cir. 2003) (holding that "so long as an inmate presents his or her grievance to prison officials and appeals through the available procedures, the inmate has exhausted his or her administrative remedies, and a

13

prison's decision not to address the grievance because it was untimely under

prison rules shall not bar the federal suit").[2]

In addition to our sister circuits' analyses and conclusions, we consider the

practical implications of imposing a procedural default component to the PLRA

exhaustion requirement. Importantly, we note that Johnson's untimely

administrative grievance in this case does not comport with the intent of Congress

that prison officials have an opportunity to address the grievance internally and

rule on the grievance before the inmate files a complaint in federal court. This is

especially so in this case because Johnson did not request leave to file an untimely

---

[2] In a well-reasoned dissent, Judge Rosen considered the exhaustion requirement in the PLRA in the context of Supreme Court precedent interpreting the habeas statute. *Thomas*, 337 F.3d at 745-46. Judge Rosen specifically discussed *Coleman v. Thompson*, 501 U.S. 722, 111 S. Ct. 2546 (1991), which held that a prisoner's untimely filing in state court barred him from seeking habeas relief in federal court. *Id.* at 745. Judge Rosen stated that the import of *Coleman* to the question presented seemed clear.

> In that case, [*Coleman v. Thompson,*] a filing three days past a state court deadline led the Supreme Court to hold that a death row prisoner had forfeited his opportunity to obtain federal court review of the constitutionality of his continued detention and sentence. The only relevant statutory prerequisite to such habeas relief was that the prisoner must have exhausted the remedies available to him in the state courts. It readily follows, in my view, that a filing past an administrative deadline presumptively precludes an inmate from establishing the nearly identical statutory prerequisite for commencement of a § 1983 suit. At a minimum, *Coleman* blunts the force of the . . . contention that a requirement of timely filing would impose too high a cost upon the constitutional rights of prisoners – the stakes obviously were much higher in *Coleman*, implicating the prisoner's asserted right to be free from confinement and an eventual death sentence.

*Id.* at 746 (Rosen, J., dissenting in part and concurring in the judgment).

administrative grievance and did not assert good cause for his failure to file a timely grievance before he filed his federal complaint. Moreover, none of the aims of § 1997e(a) has been achieved here because prison officials did not review the merits of Johnson's complaint – his grievance did not spur the corrective action that might have obviated the need for litigation, there was no filtering of potential frivolous claims, and no development of an administrative record to assist the courts in deciding the controversy. *See Porter*, 534 U.S. at 525, 122 S. Ct. at 988.[3] Allowing Johnson's untimely grievance to meet the exhaustion requirement would run counter to the understanding that § 1997e(a) requires prisoners to invoke and fully exhaust all available administrative grievance processes. *See generally Booth*, 532 U.S. at 741 n.6, 121 S. Ct. at 1825 n.6.

## V. CONCLUSION

For the foregoing reasons, we hold that the PLRA's exhaustion requirement does contain a procedural default component: Prisoners must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures before filing a federal claim. Therefore, Johnson's grievance, which

---

[3] As the *Spruill* Court acknowledged, there are subtler benefits to invoking a procedural default rule in the PLRA exhaustion context: (1) it "enhances the integrity of prison administration" and (2) it "reduces caseloads." *Spruill*, 372 F.3d at 230.

he filed out-of-time and without good cause, is not sufficient to exhaust his administrative remedies for purposes of the PLRA exhaustion requirement. Accordingly, we reverse the district court's order and remand the case with directions that the district court dismiss Johnson's action for failure to exhaust administrative remedies.

REVERSED and REMANDED.