[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11735
Non-Argument Calendar
_____

D.C. Docket No. 5:11-cv-00431-MTT

DANNY WILLIAMS,

Plaintiff-Appellant,

versus

DONALD BARROW,
VINOD SACHDEVA,
WARDEN,
DR. DEAN C. BROOME,
LIEUTENANT GAIL OLIPHANT, et al.,

Defendants-Appellees,

PAUL KING,
Doctor,

Defendant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(May 5, 2014)

Before CARNES, Chief Judge, PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

Danny Williams, a Georgia state prisoner proceeding pro se, appeals the dismissal of claims he asserted in a civil rights complaint under 42 U.S.C. § 1983.

## I.

Danny Williams entered the prison system in 1997.[1]  Soon after that, he began to experience pain in his shoulder, neck, and back.  A 2005 MRI revealed that he suffered from various abnormalities that required surgery, which Williams' treating physician recommended.  Prison officials delayed the surgery, seeking a second opinion, which they received from Dr. Paul King in 2008.  Dr. King also recommended surgery.  Williams did not receive the surgery at that time, and his condition worsened.

In November 2009 Williams was transferred to Dooly State Prison (Dooly). While there, he told Dr. Vinod Sachdeva and Warden Sheila Oubre of his condition and requested surgery.  His request was unsuccessful.  Sometime that following year, Williams told Dr. Sachdeva and Warden Oubre that he was experiencing body numbness, poor balance, difficulty standing, an inability to hold things in his hands, and inadvertent falling.  In June 2010 Williams was sent back

---

[1]  Because Williams challenges the dismissal of his claims, we accept as true his version of events and construe those events in the light most favorable to him.  See Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009).

to Dr. King for an emergency MRI, and prison officials agreed to schedule his surgery. Between then and the end of July, which is when he underwent surgery, Williams was assigned to "general population" at Dooly, which he alleges was inappropriate. He stumbled into people and things, could not go to meals, and could not care for himself or perform other basic tasks. Despite his difficulty walking, Williams was assigned to an upstairs cell. Williams told Warden Oubre about the difficulty posed by his medical conditions but nothing changed.

Dr. King performed surgery on Williams on July 30, 2010. He ordered physical and occupational therapy to facilitate Williams' rehabilitation, and Williams was transferred to Georgia State Prison (GSP) to recover. Upon arrival, Dr. Dean Broome, a physician at GSP, told Williams that he would receive physical therapy but not occupational therapy. Williams remained at GSP for three months and received one or two physical therapy sessions each week. Williams told Dr. Broome that his condition was worsening and his pain increasing, but Dr. Broome decreased the amount of Williams' pain medicine, eventually discontinuing it. Dr. Broome then transferred Williams back to Dooly even though Williams' physical therapist had ordered an additional six weeks of therapy.

Upon returning to Dooly, Williams' repeated requests that Dr. Sachdeva and Warden Oubre provide the treatment he claimed to need were denied. Because Dr. King, the physician who had performed surgery on Williams, was no longer

3

working with the prison system, Dr. Sachdeva sent Williams to another doctor, Dr. Edward Mendoza, at the Augusta State Medical Prison for his post-surgery follow-up appointment.  Williams alleges that Dr. Mendoza "refused to do anything, on several occasions," despite the fact that Williams had informed him of his worsening condition and need for continued therapy.  Williams continued to suffer from numbness and pain.

In September 2011 Williams was transferred to Washington State Prison.[2] His wife visited him at that facility on September 24, 2011.  Williams claims that while she was there, Warden Donald Barrow and Lieutenant Gail Oliphant falsely accused him of receiving contraband from her and swallowing it.  As a result, his wife was removed from his visitation list indefinitely.  Williams' wife contacted officials at the Department of Corrections, including Director of Facility Operations Randy Tillman, and she and Williams offered to provide sworn affidavits about the visitation incident, to have no-contact visits, and to undergo strip searches before visits.  However, Tillman and Warden Barrow continued to deny them visitation.

Williams filed the lawsuit that led to this appeal in October 2011, asserting various claims under 42 U.S.C. § 1983.  He alleged that five of the defendants, Warden Oubre and Drs. King, Sachdeva, Mendoza, and Broome were deliberately

---

[2] Washington State Prison is in Washington County, Georgia.  It is part of the Georgia Department of Corrections.

4

indifferent to his medical needs in violation of the Eighth Amendment.  He also contended that he has a "liberty interest in visitation with [his] wife" and that Director Tillman, Warden Barrow, and Lieutenant Oliphant interfered with that right by removing his wife from his visitation list.  Williams generally alleged that he had been discriminated against on the basis of race, in violation of the Equal Protection Clause.  Finally, he claimed that the poor treatment he received at the hands of prison officials violated the First Amendment because it was done in retaliation for his filing grievances and lawsuits against prison staff.  Williams asserted that he would have filed more grievances if not for his fear of further retaliation.

The defendants filed a motion to dismiss Williams' complaint under Federal Rule of Civil Procedure 12(b)(6).  They argued that the complaint should be dismissed because, among other things, it failed to state a claim against any defendant, ran afoul of the Prison Litigation Reform Act's (PLRA's) "three-strike" provision, 28 U.S.C. § 1915(g), and because Williams had not exhausted his administrative remedies as required by the PLRA, 42 U.S.C. § 1997e(a).

The magistrate judge recommended that the defendants' motion to dismiss be granted, and the district court agreed for the most part.  It determined that Williams' Eighth Amendment claim was precluded as to all defendants except for

Dr. Broome because he failed to exhaust administrative remedies.[3] Williams had filed a formal grievance in connection with the treatment he received from Dr. Broome, but the court was not convinced that he had ever received a response to that grievance. Because of the confusion surrounding that claim, the court declined to dismiss it for failure to exhaust administrative remedies and instead dismissed it on the ground that Williams had failed to state a claim of deliberate indifference against Dr. Broome. The court also dismissed on failure-to-exhaust grounds Williams' due process and retaliation claims against Lieutenant Oliphant, Randy Tillman, and Warden Barrow in connection with the removal of Williams' wife from his visitation list.

Williams appeals the district court's decision, contending that the court erred in three main ways. First, he argues that the district court should not have dismissed his deliberate indifference claim against Dr. Broome because Williams sufficiently alleged the elements of that claim. Second, he argues that the court should not have dismissed his deliberate indifference claims against Warden Oubre, Dr. Sachdeva, and Dr. Mendoza on failure-to-exhaust grounds because (1) he did exhaust his administrative remedies and (2) even if he did not exhaust them, any shortcoming on his part should be excused. Finally, Williams argues that the

---

[3] The district court had already dismissed several of Williams' claims when the defendants filed the motion to dismiss. Because Williams has not appealed those rulings, we do not address them.

district court erred by dismissing his due process and retaliation claims against Warden Barrow, Lieutenant Oliphant, and Director Tillman because exhaustion was complete or should have been excused because of "escalating retaliation" on the part of prison officials. [4]

## II.

"We review de novo the district court's grant of a motion to dismiss under Rule 12(b)(6) for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." Ironworkers Local Union 68 v. AstraZeneca Pharm., LP, 634 F.3d 1352, 1359 (11th Cir. 2011) (quotation marks omitted). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965 (2007) (citation omitted). To survive a motion to dismiss, therefore, a plaintiff must plead "a claim to relief that is plausible on its face." Id. at 570, 127 S.Ct. at 1974. Because Williams is proceeding pro se, we construe his pleadings liberally. See Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006).

---

[4] Williams has abandoned any challenge to the dismissal of his retaliation claim against Warden Oubre by failing to brief it on appeal. See Carmichael v. Kellogg, Brown & Root Servs., Inc., 572 F.3d 1271, 1283 (11th Cir. 2009) (holding that parties abandon arguments by failing to properly brief them).

We also review <u>de novo</u> the dismissal of a lawsuit for failure to exhaust administrative remedies under the PLRA. <u>Parzyck v. Prison Health Servs., Inc.</u>, 627 F.3d 1215, 1217 n.2 (11th Cir. 2010). The defendant bears the burden of proving that the plaintiff failed to exhaust his administrative remedies. <u>Turner v. Burnside</u>, 541 F.3d 1077, 1082 (11th Cir. 2008).

## III.

Williams' Eighth Amendment claim against Dr. Broome requires him to show deliberate indifference to a serious medical need. <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 104, 97 S.Ct. 285, 291 (1976). "To prevail on a deliberate indifference to medical need claim [a plaintiff] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." <u>Mann v. Taser Int'l, Inc.</u>, 588 F.3d 1291, 1306–07 (11th Cir. 2009). Only the second prong of that test is at issue here. Under it, Williams must prove that Dr. Broome disregarded a serious risk of harm he was subjectively aware of by conduct that was more than gross negligence. <u>See</u> <u>Townsend v. Jefferson Cnty.</u>, 601 F.3d 1152, 1158 (11th Cir. 2010).

In seeking a reversal of the district court's determination that he failed to state a claim of deliberate indifference against Dr. Broome, he makes several allegations which he believes support his contention. First, Williams asserts that Dr. King ordered physical <u>and</u> occupational therapy after Williams' surgery — a

8

fact that Dr. Broome knew based on Williams' medical records — but that Dr. Broome ordered only physical therapy.[5] Williams next points to the fact that, although he advised Dr. Broome of his "worsening condition and increased pain," Dr. Broome decreased his pain medication and then discontinued it completely. And finally, Williams argues that Dr. Broome's actions — and inaction — caused him to suffer severe pain and further disability.

Accepting all of these assertions and arguments as true, we agree with the district court that Williams failed to state a claim of deliberate indifference to a serious medical need against Dr. Broome. Williams received pain medication and physical therapy once or twice a week during the roughly three months that he was treated by Dr. Broome. Although Dr. Broome knew that Dr. King had prescribed both physical therapy and occupational therapy, Williams does not allege that Dr. Broome knew that ordering only physical therapy amounted to a "risk of serious harm." Id. at 1158 (quotation marks omitted). Similarly, while Dr. Broome decreased and eventually discontinued Williams' pain medication despite his complaints that his pain was worsening, there is no indication, and Williams does not allege, that Dr. Broome knew Williams would be subjected to a "substantial risk of serious harm" if his request for more pain medication was not granted.

---

[5] Williams alleges that Dr. Broome also deprived him of needed physical therapy when he released him from medical care and sent him back to Dooly after Williams' physical therapist had ordered six more weeks of rehabilitation.

Mann, 588 F.3d at 1307 (quotation marks omitted).  While "prison officials may violate the Eighth Amendment by failing to treat an inmate's pain," that failure must rise to the level of deliberate indifference, such as where the pain treatment "was so cursory as to amount to no care at all."  McElligott v. Foley, 182 F.3d 1248, 1257 (11th Cir. 1999).  That standard is not met here.

Neither of Dr. Broome's decisions amount to deliberate indifference of Williams' medical needs.  Instead, they are "classic example[s] of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment."  Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (quotation marks omitted).  See also Estelle, 429 U.S. at 107, S.Ct. at 293 ("A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment."); Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) ("[A] simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [does not] support a claim of cruel and unusual punishment.").  The district court properly dismissed Williams' deliberate indifference claim against Dr. Broome.

IV.

Williams' other claims were all dismissed on the basis of his failure to exhaust administrative remedies.  These claims can be broken down into two categories — the deliberate indifference claims against Warden Oubre, Dr.

Sachdeva, and Dr. Mendoza, which are related to Williams' medical treatment, and the due process and retaliation claims against Warden Barrow, Lieutenant Oliphant, and Director Tillman for removing Williams' wife from his visitation list.

The PLRA provides that "[n]o action shall be brought" by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). We have interpreted this provision to "mandate[] strict exhaustion" no matter "the forms of relief sought and offered through administrative avenues." Johnson v. Meadows, 418 F.3d 1152, 1155 (11th Cir. 2005) (quotation marks omitted). To exhaust administrative remedies, a prisoner must complete the administrative review process according to the rules set forth in the prison grievance process itself. Jones v. Bock, 549 U.S. 199, 218, 127 S.Ct. 910, 922 (2007). In other words, the PLRA's exhaustion provision requires compliance with prison grievance procedures. Id., 127 S.Ct. at 922–23.

## A.

Williams' deliberate indifference claims against Warden Oubre, Dr. Sachdeva, and Dr. Mendoza relate to the medical treatment he received at two different locations, Dooly and Augusta State Medical Prison.[6] The district court

---

[6] Williams alleged in his complaint that he was treated by Dr. Mendoza only at Augusta State Medical Prison. He now contends that he saw Dr. Mendoza not only at Dooly but also at GSP. Because Williams did not mention Dr. Mendoza's alleged treatment of him at GSP in his

determined that Williams failed to exhaust his administrative remedies as to the claims against Warden Oubre and Dr. Sachdeva because he filed only one grievance while at Dooly, and that grievance related to prison staff keeping the lights on in sleeping areas after dark. The court dismissed his claim against Dr. Mendoza on exhaustion grounds because Williams did not file a grievance related to his treatment at Augusta State Medical Prison and did not mention Dr. Mendoza in the grievance he filed while at Dooly.

Williams now contends that another grievance, Grievance 66065, which he filed while housed at a different prison, encompassed his mistreatment at the hands of Warden Oubre, Dr. Sachdeva, and Dr. Mendoza. Williams filed Grievance 66065 on September 12, 2010 (or October 13, 2010)[7] while at GSP. The district court found that that grievance pertained only to Dr. Broome, who was Williams' treating physician at GSP. We agree.

Grievance 66065 could not have pertained to Dr. Mendoza because Williams filed the grievance before he was ever seen by Dr. Mendoza. Williams' grievance complaint alleged that he was not seen by Dr. Mendoza until, at the earliest, when he returned to Dooly in November 2010. But Williams filed Grievance 66065 in October 2010 at the latest. So Williams could not have exhausted through

complaint or in his administrative grievances, we decline to consider it. See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004).

[7] The exact date on which he filed this grievance is disputed. The form itself contains both of these dates. Because the date on which it was filed does not affect the outcome of this case, we need not resolve that factual dispute.

Grievance 66065 his administrative remedies for any claim he may have against Dr. Mendoza. Nor does that grievance describe any conduct of Warden Oubre and Dr. Sachdeva. While a prisoner is not required to name each defendant in a grievance in order to properly exhaust a claim, Jones, 549 U.S at 219, 127 S.Ct. at 923, he is required to "provide as much relevant information as he reasonably can in the administrative grievance process," Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000). Williams' Grievance 66065 provided very little in the way of details. It does not include any dates. It does not provide any names, asserting only that "staff" denied him the treatment he needed. And it does not indicate that the mistreatment by "staff" occurred anywhere other than GSP, where he was housed at that time (and which was not the same the prison in which Warden Oubre and Dr. Sachdeva worked). Indeed, most of the allegations relate to his allegedly inadequate rehabilitation while he was under Dr. Broome's care. For these reasons, the district court did not err in determining that Grievance 66065 pertained only to Dr. Broome.

Even if the grievance did describe the conduct of Warden Oubre and Dr. Sachdeva, it was not timely filed. See Johnson, 418 F.3d at 1159 ("Prisoners must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures before filing a federal claim."). The Georgia Department of Corrections' grievance procedure requires an inmate to file his informal grievance

13

within ten days "from the date the [inmate] knew, or should have known, of the facts giving rise to the grievance." Appellee's Ex. 8, 15. Williams' grievance could not have been timely as to Warden Oubre and Dr. Sachdeva because he was last housed at Dooly, where Warden Oubre and Dr. Sachdeva worked, in July 2010, but he did not file Grievance 66065 until September 12, 2010 at the earliest. As a result, Williams failed to exhaust his administrative remedies for these claims, and the dismissal of them was proper.[8]  See Jones, 549 U.S. at 218, 127 S.Ct. at 922.

### B.

Williams' remaining claims are against Warden Barrow, Lieutenant Oliphant, and Director Tillman and stem from the mistreatment he allegedly received at Washington State Prison, including most notably the removal of his wife from his visitation list. Williams filed several grievances related to these claims, but the district court found that exhaustion was not complete at the time that he filed this lawsuit.

---

[8] Williams contends that his health problems provided him with "good cause" for failing to file a timely grievance. To file an untimely or otherwise procedurally defective grievance, however, a prisoner must request a good-cause waiver. See Bryant v. Rich, 530 F.3d 1368, 1378–79 (11th Cir. 2008); Johnson, 418 F.3d at 1159 (noting that prisoners must timely meet the deadlines "or the good cause standard" of Georgia's grievance procedure to properly exhaust their claim). As Williams points out in his brief, Georgia's grievance procedure allows the Department of Corrections' "grievance coordinator" to waive the untimeliness of a complaint for "good cause." But Williams does not assert that he ever sought or received such a waiver. Because he did not, we cannot excuse his failure to file the grievance on time.

14

This Court has stated that "[t]he plain language of [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal court." Leal v. Ga. Dep't of Corrs., 254 F.3d 1276, 1279 (11th Cir. 2001) (alteration in original). It is also clear that, for exhaustion purposes, the facts that count are those in existence at the time the plaintiff files his lawsuit. See Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000) (concluding that a plaintiff's status as a prisoner for purposes of § 1997e(e)'s limitation on suits "brought by a prisoner" is determined as of the time suit is filed). Section 1997e(a) provides that "[n]o action shall be brought . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). And the word "brought" in this context "refer[s] to the filing or commencement of a lawsuit, not to its continuation." Harris, 216 F.3d at 974; see also Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999) (interpreting § 1997e(a) to mean that a state inmate must comply with state grievance procedures "before filing a federal lawsuit under section 1983") (emphasis added).

Williams did file several grievances related to the claims he now raises, but he did not exhaust the grievance process as to those claims before filing this lawsuit. Williams filed Grievance 98947, which related to his wife's visitation

15

rights, on September 28, 2011.[9]  He later administratively appealed the denial of that grievance, but that appeal was not denied until November 16, 2011, which was after Williams had filed his complaint in the district court.  Thus, Williams had not exhausted the administrative process with respect to that claim before filing the lawsuit raising it.  Williams also filed a grievance related to his retaliation claim.  However, that grievance was denied because it did not comply with the Department of Corrections' requirement that each grievance contain only a single issue.  Williams did not administratively appeal that denial.  As a result, he failed to exhaust administrative remedies for that claim as well.

Williams attempts to avoid the consequences of his failure to exhaust his administrative remedies by arguing that he was afraid to file additional grievances or appeals because of "the escalating retaliation" on the part of prison staff.  In other words, Williams contends that the Department of Corrections' administrative remedies were not truly "available" within the meaning of § 1997e(a).  We have held that a prison official's "serious threats of substantial retaliation against an inmate" for lodging a grievance can "make the administrative remedy 'unavailable,' and thus lift the exhaustion  requirement" if two conditions are met: (1) the threat must actually deter the inmate from filing a grievance "or pursuing a

---

[9]  Williams filed another grievance dealing with the same issue, Grievance 99215, just four days later.  Because the allegations in the second grievance were substantively similar to those in the earlier grievance, and because the earlier grievance was still pending, the second grievance was denied.

16

particular part of the process"; and (2) the threat must be "one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust." Turner, 541 F.3d at 1085. But Williams' conclusory allegation that he failed to exhaust his remedies because of "escalating retaliation" does not come close to satisfying the Turner standard. He has not identified any actual threats of retaliation that deterred him from pursuing his grievance that would deter an "inmate of ordinary firmness" from pursuing a remedy. Id. In fact, Williams did administratively exhaust Grievance 98947; he just failed to do so before filing this lawsuit.

For all of these reasons, the district court did not err in dismissing Williams' complaint.

**AFFIRMED**.

17