[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14028
Non-Argument Calendar
_____

D.C. Docket No. 4:12-cv-00235-CDL-MSH

WILLIAM R. JACKSON, JR.,

Plaintiff-Appellant,

versus

STATE OF GEORGIA, et al.,

Defendants,

WARDEN, RUTLEDGE STATE PRISON,
DEXTER MOSES,
Lieutenant, Rutledge State Prison,
MELVIN NORWOOD,
Lieutenant, Rutledge State Prison,
RAMONA MOTT,
Counselor, Rutledge State Prison,
KING,
Counselor, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(June 29, 2015)

Before MARTIN, KRAVITCH and ANDERSON, Circuit Judges.

PER CURIAM:

William Jackson appeals the district court's dismissal of his *pro se*[1] 42 U.S.C. § 1983 civil rights complaint against multiple prison officials at Rutledge State Prison (Rutledge) for failure to exhaust administrative remedies.[2]  After a thorough review, we vacate and remand for further proceedings.

I.

The present appeal stems from a dispute between Jackson and his cellmate, W. T. Strickland, starting in August 2012.  In his complaint, Jackson described that Strickland would frequently wake him up in the middle of the night to complain that Jackson was breathing too loud.  According to Jackson, correctional officers failed to respond to his concerns about Strickland's behavior and the situation escalated.  On August 21, 2012, Strickland pushed Jackson after an argument. Jackson subsequently complained to Officers Alfred Parhal and Lenard Phillips, as

_____

[1] This court appointed counsel for Jackson's appeal.

[2] Although incarcerated at the time he filed his notice of appeal, court records show that Jackson was paroled in September 2013.

2

well as Lieutenant Dexter Moses, but prison officials took no action.  Jackson then asked Officer Terry Young for a grievance form.  When Jackson told Young why he wanted the grievance form, Young stated that he would talk to Strickland.  On September 1, 2012, Strickland attacked Jackson and knocked him unconscious in his prison cell.  Jackson was transported to a hospital and required surgery on his wrist.

On September 9, 2012, Jackson filed a motion for appointment of counsel in the district court, detailing that he "need[ed] help in bringing forward in filing a serious case" because his rights and medical needs were being ignored.  Attached to his motion, Jackson included a memorandum that detailed his issues with Strickland, but did not name any individual defendants or claims.  He also attached a copy of his prison account statement.  The district court opened a new case number and referred the matter to a magistrate judge for initial screening under 28 U.S.C. § 1915A.  After receiving a consent form from the court related to the exercise of jurisdiction by a magistrate judge, pursuant to 28 U.S.C. § 636(c), Jackson filed a second motion for appointment of counsel on September 18, expressing surprise that his first motion had resulted in the filing of his case: "I didn't know y'all was going to file for me[.]"  That same day, he filed a signed copy of the consent form.

3

On September 27, 2012, the magistrate judge directed Jackson to present his claims on a standard 42 U.S.C. § 1983 complaint form.  Jackson then moved to file an "[a]mended 42 U.S.C. § 1983 complaint."  He also submitted a standard § 1983 questionnaire signed on October 14, 2012, detailing his claims against multiple defendants, including Warden Anthony Washington, Officer Parhal, Officer Phillips, Officer Young, Lieutenant Moses, Lieutenant Norwood, Counselor Ramona Mott, Counselor King, and "Counselor Mr. P" (collectively "the defendants").  Specifically, Jackson alleged that the defendants failed to protect him from his cellmate, opened his legal mail, and did not get him adequate treatment for his injured wrist.  Jackson explained that he had filed an informal grievance on September 5, 2012, but prison officials "would not answer grievances, nor give formal grievances as of yet . . . ."  He further noted that he had filed an emergency grievance on September 8, 2012.

The magistrate judge issued a report and recommendation (R&R), recommending the dismissal of Jackson's claims against most of the defendants except the nine named defendants in this instant appeal.  Over Jackson's objections, the district court adopted the R&R.  The remaining defendants then moved to dismiss Jackson's amended complaint for failure to exhaust administrative remedies and for failure to state a claim.  The defendants noted that

4

Jackson had not utilized the Georgia Department of Corrections' (GDOC) Standard Operating Procedures (SOP) regarding the grievance process in Rutledge.

In July 2013, the magistrate judge issued a second R&R, recommending the dismissal of Jackson's "amended" complaint for failure to exhaust administrative remedies. Crediting Jackson's version of the facts as true, the magistrate judge noted that Jackson had "created a question of fact regarding the availability of the administrative remedies." But the record evidence showed that Jackson had failed to follow the grievance procedures in effect at Rutledge to fully exhaust his administrative remedies. Notably, the magistrate judge highlighted that there was no indication that Jackson ever filed a grievance concerning the attack by his cellmate or the failure of officers to protect him from the attack. Moreover, Jackson commenced the instant action by filing a motion for appointment of counsel on September 9, 2012, a mere four days after he allegedly filed his first informal grievance regarding the September 1 attack. Overruling Jackson's objections, the district court adopted the second R&R and dismissed his suit without prejudice. This is Jackson's appeal.

## II.

We review *de novo* the dismissal of a § 1983 action for failure to properly exhaust administrative remedies. *See Johnson v. Meadows*, 418 F.3d 1152, 1155

(11th Cir. 2005).  "We review the district court's findings of fact for clear error." *Bryant v. Rich*, 530 F.3d 1368, 1377 (11th Cir. 2008).

The Prison Litigation Reform Act (PLRA) requires that a prisoner exhaust all available administrative remedies before filing suit in federal court.  *See* 42 U.S.C. § 1997e(a).  Administrative remedies, however, need only be exhausted when they are made available to inmates "and to be available a remedy must be capable of use for the accomplishment of [its] purpose."  *Turner v. Burnside*, 541 F.3d 1077, 1084 (11th Cir. 2008) (internal quotation omitted).

There is a two-step process for determining whether an inmate has exhausted his administrative remedies:

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true.  If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.

*Id.* at 1082.  If the complaint is not dismissed at the first stage, the court moves on to the second step, which requires it "to make specific findings in order to resolve the disputed factual issues related to exhaustion."  *Id.*  "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies."  *Id.*

Within the Georgia Department of Corrections, the administrative grievance procedure is governed by a three-step process.  *See* Standard Operating Procedure

6

(SOP) IIB05-0001 § VI(B).  As relevant to this appeal, once an inmate has unsuccessfully attempted to resolve a complaint through discussion with the staff involved, the administrative remedies procedure commences with the filing of an informal grievance.  *Id.* § VI(B)(1).  The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the informal grievance.  *Id.* § VI(B)(5).  The timeliness requirements of the administrative process may be waived upon a showing of good cause.  *See id.* § VI(C)(2) & (D).  The SOP requires that an inmate be given a response to his informal grievance within ten calendar days of its receipt by the inmate's counselor; the informal grievance procedure must be completed before the inmate will be issued a formal grievance.  *Id.* § VI(B)(12)-(13).

## III.

As a starting point, we must decide the date the instant action commenced. *See Goebert v. Lee Cnty.*, 510 F.3d 1312, 1324 (11th Cir. 2007) ("The time the [PLRA] sets for determining whether exhaustion of administrative remedies has occurred is when the legal action is brought, because it is then that the exhaustion bar is to be applied").  The magistrate judge concluded, without citation to legal authority, that Jackson commenced the instant action on September 9 when he filed his motion for appointment of counsel.  As such, the magistrate judge noted that it was "an impossibility, then, that [Jackson] would have had time to exhaust the

7

grievance procedure prior to filing his complaint as he is required to by the PLRA." Jackson counters that he did not commence the instant action until he signed his complaint on October 14. *See Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir.), *cert. denied*, 135 S.Ct. 241 (Oct. 6, 2014) ("Under the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing") (citation omitted).

The defendants fail to cite to any case law that holds that the filing for a request for counsel triggers the commencement of a civil action under the PLRA. We have repeatedly explained that plaintiffs do not have a right to appointed counsel in civil cases. *See, e.g., Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993) ("Appointment of counsel in civil cases is . . . a privilege 'justified only by exceptional circumstances,' such as the presence of 'facts and legal issues [which] are so novel or complex as to require the assistance of a trained practitioner'") (citation omitted). *But cf. McFarland v. Scott*, 512 U.S. 849, 856-57 (1994) (explaining that a "post-conviction proceeding" under 21 U.S.C. § 848(q)(4) is commenced by the filing of a death-row prisoner's motion requesting appointment of counsel as there is a statutory right to counsel for indigent capital defendants in federal habeas corpus proceedings).

We agree with the defendants' contention that district courts have an obligation to look behind the label of a *pro se* motion and, if possible, interpret it

8

as any request for relief over which the court may have jurisdiction. *United States v. Jordan*, 915 F.2d 622, 624-25 (11th Cir. 1990). But we are not convinced that Jackson intended for his September 9 motion for counsel to initiate his § 1983 suit. Jackson articulated that he was seeking the assistance of counsel to help him with a "serious case," and he was clearly surprised that the district court had started the action on his behalf. Jackson also did not name any defendants or identify any specific claims in his initial request for counsel. He subsequently consented to have a magistrate judge conduct the proceedings on September 18. Moreover, it was not until the court advised him that he needed to utilize the proper forms to file his suit that Jackson filed the standard § 1983 questionnaire listing out his specific claims against named defendants. As such, we conclude that the earliest date that Jackson can be said to have initiated his suit was on September 18, the date he submitted his signed consent form, which was more than ten days after he filed his informal grievance on September 5.

## IV.

Next, we must determine whether, if his factual allegations are taken as true, Jackson failed to exhaust his administrative remedies at the time he initiated this action. Accepting Jackson's contention as true, he filed an informal grievance on September 5, 2012, and an emergency grievance on September 8, 2012. But

9

Rutledge prison officials failed to respond to his grievances and further refused to provide him with a formal grievance form.

In *Turner*, we discussed the responsibilities of an inmate to appeal a response from prison officials where that response did not accord with inmate grievance procedures. 541 F.3d at 1083. We found that an inmate's failure to appeal after the warden ripped up his grievance, instead of responding in writing as Georgia's inmate grievance procedure required, did not mean that the inmate failed to exhaust his administrative remedies. *Id.*

The inmate grievance procedure at issue here requires that prison officials provide a detailed response within ten days of receiving a prisoner's informal grievance. Accepting Jackson's version of events, he never received a response to his informal grievance filing. Thus, as in *Turner*, Jackson should be excused for his failure to pursue further administrative remedies because the lack of response to his informal grievance did not comply with the inmate grievance procedure.

Because, under the first step, we agree with the district court's assessment that *Turner* excuses Jackson's failure to exhaust his administrative remedies, we must move to the second step of the *Turner* framework. In this step, the district court found a factual conflict. Specifically, Jackson contends that he complied with the grievance procedure in effect at Rutledge by submitting an informal grievance on September 5 and an emergency grievance on September 8. The

10

defendants maintain that GDOC records show that Jackson did not file any grievances on those dates. The district court resolved this factual dispute in the defendants' favor.

In their attempt to show that Jackson failed to properly exhaust his available administrative remedies, the defendants relied exclusively on a copy of the Rutledge prison log to argue that Jackson never filed an informal grievance within the requisite ten-day period concerning the attack by his cellmate on September 1, 2012. GDOC records, which the defendants attached to their motion to dismiss, listed the grievances Jackson filed at Rutledge between March 18, 2010, and November 13, 2012. During that time frame, Jackson filed approximately 24 informal grievances on various issues. Between August 15, 2012, when Jackson alleged that his issues with his cellmate started, and September 1, 2012, the date of the physical altercation, the log notes that Jackson filed a single informal grievance on August 21, in which he complained that prison officials were opening his mail. The only grievance registered on the prison log regarding his cellmate is from September 27, 2012, in which Jackson complained that Strickland had laughed at him, harassed him, and cursed at other inmates. None of the documented grievances allege that prison officials failed to protect Jackson prior to the September 1 attack, or that prison officials were derelict in their duty to provide him medical care.

11

Jackson counters that the district court failed to consider "grievance receipts" that corroborate his assertion that he submitted an informal grievance on September 5 and an emergency grievance on September 8, and that the Rutledge grievance log was both incomplete and inaccurate. He further noted that he had been unable to submit the receipts to the court because he was could not make copies and he did not want to send originals in the mail. *See Garvey v. Vaughn*, 993 F.2d 776, 780 (11th Cir. 1993) (recognizing the unique filing disadvantages of *pro se* inmates, including the inability to directly file documents with the clerk's office). The defendants made copies of the receipts and prepared a document titled, "Verification of Copying and Forwarding of Material Evidence Relating to the Exhaustion of Administrative Remedies." The document was signed by both Jackson and his grievance counselor, Ruthie Shelton, and provided that Jackson

> was allowed to make copies of all material evidence to be presented regarding grievances filed relating to his claim that he exhausted all administrative remedies prior to filing this action. The evidence is contained in a total of 37 pages. The aforementioned pages will be given to the undersigned prison official and forwarded to the Defendants' attorney on this date.

Jackson complained to the district court that it was improper to require him to turn over evidence to the defendants and that this procedure placed him at a "great disadvantage." He also "want[ed] to make sure the Judge or [the Clerk] got the 37 pages[.]" *See Garvey*, 993 F.2d at 780 (describing that a *pro se* inmate cannot "ascertain whether a document mailed for filing arrived," and "has no

12

recourse other than to entrust his court filings to prison authorities over whom he has no control" and who "may have every incentive to delay") (citation omitted). There is no record that the district court ever responded to Jackson's inquiry.

The defendants later filed the "Verification" document with the court, confirming that they had copied Jackson's grievance receipts. But they only submitted five of the receipts to the court. A receipt from September 6 has a brief notation for "injury." A receipt dated October 12 states "my injury, staff won[']t follow up 9-5-12." An additional receipt from October 18 notes "to get Formal Grievance Form." The magistrate judge made no mention of the grievance receipts in his second R&R. Rather, the magistrate judge highlighted that Jackson had provided inconsistent statements because Jackson "contends that he has receipts for the grievances made, but is not able to get copies. [] In the next breath, [Jackson] admits that inmates have to request a formal grievance but that he did not receive one." But there is no acknowledgement about Jackson's attempts to have his grievance receipts copied and then sent to the defendants' counsel for submission to the court. In his objections to the second R&R, Jackson reiterated that several of his grievances were not listed on the prison log and that he had submitted 37 pages of evidence to show that Rutledge's grievance log was incomplete. Notably, he specifically queried the court "what of the 37" pages?"

13

The district court, however, overruled Jackson's objections and summarily dismissed his suit.

The defendants argue on appeal that Jackson's receipts fail to identify the subject matter of the grievances or whether any of the defendants were implicated. But there is nothing in the record to suggest that the district court made any factual findings with respect to the grievance receipts and whether they contradict the defendants' assertion that Jackson failed to exhaust his administrative remedies at the time he commenced his suit. We, therefore, vacate the district court's entry of dismissal and remand the case to allow the court to engage in the second *Turner* fact-finding step with respect to the contested grievance receipts.[3]

**VACATED AND REMANDED.**

---

[3] In light of our decision to remand the case to allow the district court to engage in necessary fact finding with respect to the contested grievance receipts, we do not address Jackson's assertion that the court failed to properly notify him of the nature of the proceedings and afford him a meaningful opportunity to develop a factual record.