[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-13694
_____

D.C. Docket No. 4:11-cv-00533-SPM-CAS

MOLIERE DIMANCHE, JR.,

Plaintiff-Appellant,

versus

JERRY BROWN, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(April 17, 2015)

Before WILLIAM PRYOR and JORDAN, Circuit Judges, and ROSENTHAL,[*] District Judge.

ROSENTHAL, District Judge:

---

[*] Honorable Lee H. Rosenthal, United States District Judge for the Southern District of Texas, sitting by designation.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), requires state-prison inmates suing prison officials for federal civil-rights violations first to exhaust the state's administrative remedies. Although federal law sets the exhaustion requirement, state law determines what steps are required to exhaust. The first steps in Florida's prescribed grievance process are to submit an informal, then a formal, grievance to designated officials within the correctional institution. A Florida inmate may bypass this requirement and submit a grievance directly to the Secretary of the Florida Department of Corrections if the complaint is reprisal for filing grievances and if certain conditions are satisfied. This appeal requires us to decide if the grievance filed by Moliere Dimanche, Jr. met those conditions. Dimanche sued 16 prison officials in federal court, alleging that he was subjected to harsh treatment in retaliation for filing grievances about prison conditions. The district court dismissed the suit because Dimanche did not file an internal grievance raising this complaint at the institutional level but instead submitted it directly to the Secretary. The court also dismissed for failure to state a claim under 28 U.S.C. § 1915(e)(2). Our review shows that Dimanche did satisfy the exhaustion requirement because he met the conditions for filing a grievance directly with the Secretary. We also conclude that his complaint stated at least some claims that should not have been dismissed without either explanation or leave to amend. Accordingly, we reverse and remand.

2

## I.     BACKGROUND

Dimanche, an inmate in the Florida state prison system, filed this § 1983 suit in October 2011 against a number of officials working at the Liberty Correctional Institution ("Liberty C.I.") and its Quincy Annex. Dimanche alleged cruel and unusual punishment, due process violations, and First Amendment retaliation.

Dimanche's amended federal complaint alleged that on July 3, 2010, several Liberty C.I. correctional officers, at the direction of Acting Warden Colonel Jerry Brown, sprayed him with "an overwhelming amount" of teargas in retaliation for filing grievances about prison conditions. [R8, ¶ 1]. Dimanche alleged that he was gassed the day after he finished 60 days of segregated confinement imposed as a disciplinary sentence. He was supposed to have been released into the general population on July 2. Dimanche alleged that instead of releasing him, Acting Warden Colonel Brown ordered that he remain in disciplinary confinement past his scheduled release date so that the guards could gas him there.

Dimanche alleged that the gassing began on July 3 when a guard approached his cell door yelling "grieve this!," accompanied by obscenities. [*Id.*, ¶ 6]. Dimanche alleged that Sergeant Matthew Clark then "stag[ed] a minor disturbance" to "deceiv[e] the confinement surveillance, which does not record audio, into portraying" Dimanche as behaving "disruptive[ly]." [*Id.*]. Captain J. S. Barton and a guard approached the cell and explained to Dimanche that he "was

3

about to be gassed for writing grievances." [*Id.*, ¶ 7]. Captain Barton repeatedly told Dimanche that he would get "another gassing" for every grievance he filed "until [Barton] could have [Dimanche] committed to a Close Management Facility," where he would be "gassed to death." [*Id.*, ¶¶ 7–8]. Another guard later repeated this threat.

Dimanche alleged that Captain Barton then ordered Sergeant Clark to gas Dimanche. Instead of receiving a short burst of inflammatory spray, however, Dimanche received "three direct [more than five-second] bursts" of teargas, a chemical irritant "meant to quell riots." [*Id.*, ¶ 9]. Dimanche alleged that he could not breathe. He also alleged that he did not receive a shower, which was supposed to be promptly provided after gassing, or medical treatment, and that he suffered pain for a week afterwards.

In January 2011, Dimanche was transferred to the Liberty C.I.'s Quincy Annex. On April 15, 2011, he sent a grievance directly to the Secretary of the FDOC. The grievance was labeled in the lower right hand corner with the words "Reprisal for grievances wrote." [R1, p. 15]. The grievance began with Dimanche's statement that he was "in fear of [his] life here at Quincy Annex and at Liberty C.I." and that he had been "gassed in confinement for grievances that [he] wrote." [*Id.*]. He explained that as his "gassing was planned, the confinement officers called the colonel, who told them to hold [Dimanche] until [he] was

4

gassed." [*Id.*].  He also alleged that the gassing was followed by a false disciplinary report and by threats to send him "to C.M. and gas[] [him] to death if [he] wrote another grievance."  [*Id.*].

He alleged that after he was transferred to the Quincy Annex, guards took his mattress and sheets.  When he complained to the "major" at the Annex, he received a retaliatory "false D.R.," was "reminded what happened the last time [he] wrote grievances," and was warned "not to lose [his] life over something so stupid."  [*Id.*].  Dimanche stated that he feared his "next mistake [would] get [him] killed here."  In his grievance, he asked the Secretary to remove him from both the Liberty C.I. and the Quincy Annex because it was "only a matter of time before I am set up for another false D.R. and I am sent to C.M. to be gassed to death." [*Id.*].

The grievance Dimanche sent directly to the Secretary of the FDOC referred to the "colonel," who allegedly told the guards to "hold" Dimanche in confinement until he was gassed; to the "major" Dimanche talked to about the guards taking his mattress and sheets; to Officer Bryant, who gave him a "false D.R." after Dimanche filed a grievance about the mattress and sheets; and to Captain Barton, who allegedly threatened to have Dimanche sent to a close management facility, where he would be "gassed to death if [he] wrote another grievance."  [*Id.*].

5

The Secretary did not respond to the merits of Dimanche's complaint. Instead, on April 28, 2011, M. Solano, acting on the Secretary's behalf but allegedly an employee at the Quincy Annex, mailed the grievance back to Dimanche with the explanation that he had to "first submit [his] appeal at the appropriate level at the institution" before sending the grievance to the Secretary. [R1, p. 14; R8, ¶ 17]. Solano gave Dimanche 15 days from the date of her response to file a grievance with the inspector at the institution.

In this lawsuit, Dimanche alleged that he did not receive Solano's response until "well after the 15 days had expired." [R8, ¶ 18]. Dimanche did not file a grievance at the institutional level about the July 3, 2010 gassing, the allegedly false disciplinary report, the threats of further reprisals at the Liberty C.I., or the allegedly false disciplinary report and threats at the Quincy Annex. Dimanche alleged that after he sent his grievance to the Secretary, the Quincy Annex Assistant Warden, along with an inspector and guards, threatened to retaliate against him.

The defendants moved to dismiss Dimanche's amended complaint for failure to exhaust. The magistrate judge recommended granting the motion. The judge concluded that Dimanche failed to exhaust because he did not comply with the State's requirements for bypassing the internal grievance steps and instead filing directly with the Secretary of the FDOC. The judge also concluded the failure to

6

exhaust was not excused because the three-step grievance process was available to Dimanche. The judge found that Dimanche did not in fact fear retaliation for filing a grievance within the institution, based on 12 internal grievances he had filed against one or more of the defendants after the July 3, 2010 gassing. Dimanche filed these grievances while he was at the Quincy Annex (where he was transferred in January 2011) or the Liberty C.I. (where he was transferred back in April 2011).

The magistrate judge recommended that Dimanche's complaint be dismissed for failure to exhaust and on the additional ground, not raised by the defendants' motion, that his amended complaint failed to state a claim. The district court adopted the magistrate judge's recommendation and report, dismissing Dimanche's amended complaint for failure to exhaust as well as for failure to state a claim. Neither the magistrate judge nor the district judge explained why Dimanche's amended complaint failed to state a claim.

Dimanche appealed. This case was set for oral argument in April 2014. Before argument, the State notified the court of a factual problem in the record. The State moved to remand so it could supplement the record with additional information about the 12 internal grievances Dimanche had filed against the defendants after he was gassed and before he filed his § 1983 complaint. We granted the State's motion and ordered a limited remand, retaining jurisdiction.

The State supplemented the record with information showing that Dimanche filed grievances against some of the defendants when he was at the Liberty C.I., the Liberty Work Camp, and the Quincy Annex.  The district court did not enter findings on the effect of this new evidence, "conclud[ing] that it lack[ed] jurisdiction at [that] time to consider new evidence, to entertain a newly-filed motion to dismiss, or to revisit a judgment that was entered two years ago."  [R98, p. 2].  The district court ordered the Clerk of Court to "prepare a supplemental record on appeal and . . . [to] transmit it to the Eleventh Circuit."  [*Id.*, p. 3].

The issues on appeal are whether Dimanche exhausted available administrative remedies and whether Dimanche's complaint stated a plausible claim for relief.

## II.    EXHAUSTION

### A.    Exhaustion under the PLRA

Under the PLRA, a prisoner may not file a § 1983 action "until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "'[W]hen a state provides a grievance procedure for its prisoners, . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit.'"  *Bryant v. Rich*, 530 F.3d 1368, 1372–73 (11th Cir. 2008) (quoting *Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005)).  The PLRA requires "proper

8

exhaustion" that complies with the "critical procedural rules" governing the grievance process. *Woodford v. Ngo*, 548 U.S. 81, 95 (2006).

"A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of [its] purpose.'" *Turner v. Burnside*, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting *Goebert v. Lee County*, 510 F.3d 1312, 1322–23 (11th Cir. 2007)). "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." *Id.*

"[A] defense of failure to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement." *Turner*, 541 F.3d at 1082. "As a result, deciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." *Id.* "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.*

Second, "[i]f the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* (citing *Bryant*, 530 F.3d at 1373–74). "The defendants bear the

9

burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id.* (citing *Jones v. Bock*, 549 U.S. 199 (2007); *Roberts v. Barreras*, 484 F.3d 1236, 1240 (10th Cir. 2007)). "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083.

We review *de novo* a district court's interpretation and application of the PLRA's exhaustion requirement. *See Johnson*, 418 F.3d at 1155. We review the district court's factual findings on exhaustion for clear error. *See Bryant*, 530 F.3d at 1377.

## B.     Exhaustion Under the Florida Grievance Process

"[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' — rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (quoting *Woodford*, 548 U.S. at 88). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

In Florida, a prisoner must: (1) file an informal grievance with a designated prison staff member; (2) file a formal grievance with the institution's warden; and then (3) submit an appeal to the Secretary of the FDOC. *Chandler v. Crosby*, 379

10

F.3d 1278, 1288 (11th Cir. 2004) (citing FLA. ADMIN. CODE §§ 33-103.005–

103.007).  Dimanche did not use this three-step process.  He did not first file his

April 15, 2011 grievance informally and formally at the institutional level.  Instead,

he sent it directly to the Secretary of the FDOC.  Inmates may proceed directly to

this step if they are submitting a grievance of reprisal and if they: (1) "state at the

beginning of Part A of Form DC1-303 that the grievance . . . is a grievance of a

reprisal"; and (2) "clearly state the reason for not initially bringing the complaint to

the attention of institutional staff and by-passing the informal and formal grievance

steps of the institution or facility."  *Id.* § 103.007(6)(1)–(2).  Dimanche contends

that the grievance he sent directly to the Secretary satisfied these requirements.

### C.    Analysis

The grievance Dimanche sent the Secretary on April 15, 2011 reads as

follows:

<u>Part A – Inmate Grievance</u>

I am in fear for my life here at Quincy Annex and at Liberty C.I.  On July 3rd, 2010 I was gassed in confinement for grievances that I wrote.  I had already been in confinement for 60 days and I was supposed to be released the day before along with several other inmates that came to confinement on May 2nd, 2010 just like me and had been in confinement for 60 days such as Travis Evans, Fredrick McKinney, and Shawn Zapata.  But, as my gassing was planned, the confinement officers called the colonel who told them to hold me until I was gassed.  After I was gassed I was served a false D.R. for Participating in a Minor Disturbance and Captain Barton promised me that I would be sent to C.M. and gassed to death if I wrote another grievance.  Out of fear for my life I plead No Contest to the D.R., did

11

more time in confinement for it, and remained silent until now.  I didn't even tell my family about it at visitation.  After confinement I was transferred to Quincy Annex and I recently had a situation with Officer Bryant when my mattress and sheets were taken from me and I had to sleep on steel.  I decided to grieve the situation even though it was a gamble of my safety.  I was consulted by the major, who said that he would properly resolve the situation and today I was served a false D.R. from Officer Bryant for not making my bed on the day of the incident.  While I was there, the officer that served me the D.R. reminded me what happened the last time I wrote grievances and warned me not to lose my life over something so stupid.  Now, I fear that my next mistake will get me killed here.  I am requesting to be removed from this Institution completely and moved closer to my family in Orlando.  This false D.R. will stop me from putting in my good adjustment transfer to C.F.R.C. in Orlando by my family. It is only a matter of time before I am set up for another false D.R. and I am sent to C.M. to be gassed to death.  Please remove me from this institution, both Quincy Annex and Liberty C.I.

[R1, p. 15].  In the lower right corner of the grievance, in large handwritten letters, is the note, "Reprisal for grievances wrote."  [*Id.*].  It is unclear whether Dimanche or a state prison official wrote this note.

The district court concluded that this grievance did not satisfy the conditions for bypassing the informal and formal grievance steps at the institutional level.  We disagree.  The grievance form stated at the bottom that it could be used for "filing a formal grievance at the institutional or facility level as well as for filing appeals to the Office of the Secretary."  [*Id.*].  The form explained that "when an inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the sensitive nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to

12

the Secretary's Office. . . . The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution.  If the inmate does not provide a valid reason or if the Secretary or his designated representative feels that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level."  [*Id.*].

Dimanche clearly stated at the beginning of the form that he was filing a grievance of reprisal.  In the first sentence, Dimanche makes clear that he was "in fear for [his] life" at the Quincy Annex and at the Liberty C.I.  The second sentence explains that he had been "gassed in confinement for grievances [he] wrote."  [*Id.*].  The next two sentences emphasize that those involved in the gassing included the "colonel."  The Acting Warden of the Liberty C.I. was Colonel Jerry Brown.  Dimanche alleged in his federal complaint that this was the colonel he referred to in the grievance.  The next sentence explains that after the gassing, Dimanche not only received a "false D.R." from Officer Bryant, but was also threatened by Captain Barton with a transfer to "C.M." to be "gassed to death." [*Id.*].  The grievance continues by explaining the retaliation Dimanche suffered and was threatened with after he was transferred to the Quincy Annex and informally complained to the "major" about the guards' seizure of his mattress and sheets. And, to make it even more clear, the bottom of the form states "Reprisal for grievances wrote." [*Id.*].

13

The Florida Administrative Code does not require an inmate to use the words "grievance of reprisal" to submit a grievance directly to the Secretary. *See* FLA. ADMIN. CODE § 33-103.007(6)(a)1. The Florida Administrative Code defines a "Grievance of Reprisal" as "[a] grievance submitted by an inmate alleging that staff have taken or are threatening to take retaliatory action against the inmate for good faith participation in the inmate grievance procedure." FLA. ADMIN. CODE § 33-103.002. The beginning of Dimanche's form met this definition and satisfied the first requirement for bypassing the institutional grievance steps. *See Goebert v. Lee County*, 510 F.3d 1312, 1325 (11th Cir. 2007) (finding that the plaintiff had properly exhausted the Georgia Department of Corrections requirement of "a written request (indicating 'grievance')" to be filed by filing a "complaint" that clearly was intended as a grievance).

Dimanche also satisfied the second requirement for bypassing the institutional-filing steps and instead submitting the grievance directly to the Secretary. His form "clearly stated the reason for . . . by-passing the informal and formal grievance steps." *See* FLA. ADMIN. CODE § 33-103.007(6)(a)2. Dimanche repeatedly described his fear that he would be killed if he filed additional grievances at the institutional level. He identified high-ranking institutional officers as involved in the reprisals he suffered. He claimed that the "colonel" had orchestrated the retaliatory gassing, explaining that as the "gassing was planned,

14

the confinement officers called the colonel who told them to hold [Dimanche] until [he] was gassed." [R1, p. 15]. The record shows that the "colonel" referred to was the Liberty C.I. Acting Warden Colonel Jerry Brown. Dimanche alleged in his federal court complaint, and the supplemented record makes clear, that Acting Warden Colonel Brown received and responded to formal grievances Dimanche filed at both the Liberty C.I. and its Quincy Annex. The last response from the Acting Warden was on March 29, 2011, two weeks before Dimanche filed this direct grievance with the Secretary of the FDOC.

In addition to the "colonel," Dimanche's grievance form identified a "major" at the Quincy Annex. Dimanche alleged that after he was transferred to the Quincy Annex, he informally complained to this "major" about the guards' actions. Dimanche alleged that in retaliation for the complaint, he received a "false D.R." and a warning against filing more grievances. These events, according to the grievance form, made Dimanche "fear that his next mistake [would] get [him] killed." [Id.].

Dimanche's allegation that the "colonel" had helped orchestrate the retaliatory gassing at the Liberty C.I., that Captain Barton threatened him with further reprisals, and that he was retaliated against after he complained to the "major" at the Quincy Annex, explained why he could not file the "grievance of reprisal" internally. Dimanche's grievance did not state that the "colonel" was the

15

Acting Warden.  But the Secretary of the FDOC manages Florida's prisons and presumably knew the Acting Warden of the Liberty C.I.  And even without knowing Colonel Brown's role as Acting Warden or that he was responsible for responding to grievances addressed to the Warden of both the Liberty C.I. and its Quincy Annex, the allegations that high-ranking prison officials orchestrated or were involved in retaliatory actions after Dimanche filed internal grievances "clearly state" his reasons for not filing a complaint at the institutional level.[1]

In short, Dimanche stated at the beginning of Part A that he was filing a grievance of reprisal and the content of his grievance stated his reason for bypassing the institutional grievance process.  Dimanche's grievance was a proper direct grievance.[2]  But the Secretary of the FDOC did not treat it as such, instead returning it to Dimanche through Solano, who instructed Dimanche to pursue his

---

[1] In 2012, there were 43 colonels on the FDOC's 23,525-person staff.  Those 43 colonels were spread over 48 prisons statewide.  *See* 2011–2012 Annual Statistics Report, http://www.dc.state.fl.us/pub/annual/1112/AnnualReport-1112.pdf.   We take judicial notice of these facts because they can be accurately and readily determined from public reports prepared by the Florida Department of Corrections, the accuracy of which cannot reasonably be questioned.  *See* FED. R. EVID. 201(b)(2); *Terrebonne v. Blackburn*, 646 F.2d 997, 1000 n.4 (5th Cir. 1981) ("Absent some reason for mistrust, courts have not hesitated to take judicial notice of agency records and reports.").

[2] We note that Florida law requires prisoners to file direct grievances within 15 days after the event or incident at issue, although extensions of time "shall be granted" when the inmate demonstrates that it was not feasible to file in the 15-day period and that he or she made a good faith effort to file timely.  *See* FLA. ADMIN. CODE § 33-103.011(2).  Dimanche alleged that he was gassed on July 3, 2010, but he did not file his grievance to the Secretary until April 15, 2011, nine months after that incident and three months after his transfer to the Quincy Annex. Neither the magistrate nor the district judge based the dismissal for failing to exhaust on Dimanche's delay in filing the grievance. The parties have not briefed this issue on appeal.  We do not take a position on whether Dimanche's grievance was timely filed.

16

grievance at the institutional level.  Because the form should not have been returned, Dimanche's failure to pursue his grievance internally does not bar his § 1983 complaint for failure to exhaust administrative remedies.  The PLRA does not "require[] an inmate to grieve a breakdown in the grievance process."  *See Turner*, 541 F.3d at 1083.[3]

The district court erred in dismissing Dimanche's complaint for failure to exhaust administrative remedies.

### III.  FAILURE TO STATE A CLAIM

In addition to dismissing the complaint for failure to exhaust under § 1997(e), the district court dismissed "for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)."  [R83, p. 2].  A district court may on its own "dismiss the case at any time" if it "determine[s] that" "the action" "fails to state a claim on which relief may be granted," 28 U.S.C. § 1915(e)(2)(B)(ii), but it must explain its findings with "sufficient clarity" for effective appellate review.  *United States v. Huff*, 609 F.3d 1240, 1247 (11th Cir. 2010).

---

[3] We recognize that the supplemented record amply shows that, despite his vivid statements of fear of further reprisals for filing grievances at the institutional level, Dimanche did precisely that, and did it often.  But the district court did not rest its decision on the supplemental record.  And because we find that Dimanche exhausted administrative remedies through the one-step direct grievance submission to the Secretary, we need not consider whether the three-step grievance procedure was unavailable to Dimanche under *Turner*, 541 F.3d at 1077.

We review a district court's dismissal for failure to state a claim *de novo*, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff. *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). *Pro se* pleadings are liberally construed. *Douglas v. Yates*, 535 F.3d 1316, 1319–20 (11th Cir. 2008).

The defendants neither addressed these arguments below nor briefed them on appeal. The district court's one-sentence conclusion that Dimanche's amended complaint failed to state a claim is insufficient explanation, particularly given the district court's earlier statement that Dimanche's allegations were "generally sufficient to state a claim." [R5, at p. 2].

Dimanche alleged violations of the Eighth Amendment's cruel and unusual punishment clause, his Fifth and Fourteenth Amendment due process rights, and the First Amendment's protection against retaliation for filing grievances. He alleged that prison guards and officials sprayed him with a large amount of teargas without provocation; denied him prompt medical care; filed false disciplinary reports; threatened further retaliation; and, after his transfer to the Quincy Annex, filed another false disciplinary report and threatened him, all in retaliation for filing grievances. Taken as true, these allegations state First and Eighth Amendment claims against many of the defendants. *See Boxer X v. Harris*, 437 F.3d 1107, 1112 (11th Cir. 2006) ("First Amendment rights to free speech and to petition the

18

government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment."); *Ort v. White*, 813 F.2d 318, 324 (11th Cir. 1987) ("[I]t is a violation of the Eighth Amendment for prison officials to use mace or other chemical agents in quantities greater than necessary for the sole purpose of punishment or the infliction of pain." (quotations omitted)); *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) ("[D]eliberate indifference may be established by a showing of grossly inadequate care as well as by a decision to take an easier but less efficacious course of treatment."). Dimanche's due-process claims may also survive dismissal. *See Sandin v. Conner*, 515 U.S. 472, 483–84 (1995) (to state a due-process claim, an inmate must allege a deprivation that "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life").

Because the district court failed to explain this dismissal ruling, we reverse and remand for further proceedings.

## IV.   CONCLUSION

We recognize the difficulty prison officials and courts face in adhering to exhaustion requirements that serve important federal and state interests and also ensuring appropriate consideration of each inmate's submission. We recognize that Florida prison officials familiar with Dimanche and his history while incarcerated may view our result as unrealistic or unduly formalistic. But we also

19

recognize that our task is to ensure that the exhaustion requirements are properly applied so that each federal lawsuit receives the appropriate review. Accordingly, we **REVERSE** the district court's dismissal for failure to exhaust administrative remedies and for failure to state a claim, and **REMAND** for further proceedings consistent with this opinion.