[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-11249
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cv-20619-CMA

ROBERTO ARIAS,

Plaintiff-Appellant,

versus

MARIA PEREZ, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 7, 2019)

Before WILSON, GRANT, and HULL, Circuit Judges.

PER CURIAM:

Roberto Arias, a state inmate in Florida, appeals the district court's dismissal

of his § 1983 complaint for failure to exhaust administrative remedies.  We affirm.

I.

Roberto Arias is a Florida prisoner serving a 40-year sentence for aggravated assault with a deadly weapon, aggravated battery, and witness tampering.  On June 6, 2016, Arias submitted an informal grievance to the Dade Correctional Institution "requesting to be Transfer to another institution" because his "LIFE was in DANGER" of gang violence.  Arias's request was approved, and on June 21, he was transferred to Desoto Correctional Center.

Arias alleges that, a few days after arriving at Desoto, he verbally requested protection from officer Catherine Hays—specifically, that he be placed in a "P.M." (protective management) facility—because he still feared gang violence.  He says that Hays told him "we don't do that over here" and told him to speak to another individual, officer Rios, who also did not help Arias.  About a month and a half later, on August 15, Arias suffered various injuries when he was attacked by another inmate with a lock inside a sock.

On August 26, Arias submitted a written request form to Hays in which he indicated that he was "writing you to let know that I'm in the enfermery because [an unknown inmate] hit me with a lock inside a sox in my head. . . .  I [] told you in my arrived here on my classif. interview that (please) I do request to you to be

2

placed in dorm-M as some kind of protection for me there . . . ."[1]  Arias wrote that he "also wrote a request to Sgt: Quezada and she (denied)" his request.  He concluded: "Please I need you send me the name of the inmate who hit me in my head in (B-Dorm) on: 08/15/2016; and also requesting to you to put him on my records inmate's file in especial review with me."  Hays wrote "It has been done" or "This has already been done" on the request form.

Also on August 26 (or possibly September 1), while in the infirmary, Arias saw members of the Institutional Classification Team (including the assistant warden) in person and asked them for "full Protection."  But "they only offer him (A.I.P) Administrative Institutional Protection; and they told him that they will Transfer him to another regular institution."  So on August 31, Arias submitted a written grievance to the assistant warden "requesting to be transfer to (P.M.-unit) under full protection to 'PREVENT' more violence against me by another inmate in the future."  He stated that it was the Institutional Classification Team's job to "verify inmate records before making a wrongful decision especially when inmate's claim that my life is in danger" and that "[b]ased on my above stated facts . . . I ask that my (P.M.-unit) status be correctly evaluated by (I.C.T.) DeSoto; in

---

[1] The request form contains a box for inmates to check if the request is an informal grievance, but Arias did not check that box.

3

accordance to the factors to be consider and my request to be placed on (P.M.-unit) be approved and I can saved my life!"

On September 5, Arias sent another written grievance, this time to the Secretary of the Florida Department of Corrections.  He labeled it as a "Request for P.M-unit-facility" and the text indicated he was "requesting that my (P.M-unit) status be (review) and to be replace in the (P.M.-unit facility)."  Arias argued that the Institutional Classification Team's recommendation that he simply be transferred to another institution was "an 'Inappropriate' solution for my case; and I believe this recommendation is Cruel and Negligent Act where incompetent staff's wrong decisions make inmates get (hurt & killed) in prison where they're putting my life in danger in only (remove) and keeping me transferred from one institution to another."  He concluded: "I am humbly ask that my request for (P.M.-unit facility) status be correctly evaluated by Central Office and to be placed back on a (P.M.-unit facility) where I can saved my life!"

An October 4 response stated that the September 5 grievance had been "received, reviewed, and evaluated," but that Arias had "filed this appeal prematurely" because he was "approved for placement in a Protection Management unit on 09/02/16" and was "now housed in the Protection Management unit at Martin Correctional Institution."  Arias had been transferred on September 9.  Because of that, the grievance was "returned without action."  On

4

appeal, Arias concedes that the new placement was correct, but argues that it "was to late" because he was already hurt.

## II.

We review a district court's dismissal for failure to exhaust administrative remedies under the PLRA de novo.  *Bingham v. Thomas*, 654 F.3d 1171, 1174 (11th Cir. 2011).  We review the district court's factual findings for clear error.  *Id.* at 1174–75.

## III.

### A.  PLRA Exhaustion

The PLRA forbids suits by prisoners "with respect to prison conditions" under any federal law, including § 1983, "until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This requirement grants prison authorities "time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Porter v. Nussle*, 534 U.S. 516, 525 (2002).  It "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Id.* at 532.  And it serves as a mandatory pre-condition to suit, even when seeking the remedies available under the administrative scheme may be futile or the remedies inadequate.  *Alexander v. Hawk*, 159 F.3d 1321, 1325–26 (11th Cir. 1998).

Failure to exhaust "is an affirmative defense under the PLRA," and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007).  Deciding a motion to dismiss for failure to exhaust proceeds in two steps: first, looking to the defendant's motion and the plaintiff's response, the court assesses whether dismissal is proper even under the plaintiff's version of the facts; and second, if dismissal is inappropriate under the plaintiff's version of the facts, the court makes "specific findings in order to resolve the disputed factual issues related to exhaustion."  *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008).  The burden is on the defendant to show a failure to exhaust.  *Id.*  A prisoner must exhaust each claim that he seeks to present in court.  *See Jones*, 549 U.S. at 219–20 ("All agree that no unexhausted claim may be considered.").

B. *Florida's Administrative Scheme*

State law "determines what steps are required to exhaust."  *Dimanche v. Brown*, 783 F.3d 1204, 1207 (11th Cir. 2015); *see also Jones*, 549 U.S. at 218 (noting that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion").  The Florida Administrative Code sets forth the steps prisoners must take to exhaust their claims.  First, a prisoner must submit an informal grievance within 20 days of the incident.  Fla. Admin. Code §§ 33-

6

103.002(12), 33-103.005(1), 33-103.011(1)(a).[2] The Florida Department of Corrections has 15 days to respond. *Id.* § 33-103.011(3)(a). Second, if the informal grievance is denied, the prisoner must appeal within 15 days of the denial by filing a formal grievance at the institutional level and attaching the contested informal grievance. *Id.* §§ 33-103.006(1)(a) and (2)(g), 33-103.011(1)(b)(1). Third, if the formal grievance is also denied, the prisoner must appeal within 15 days of the denial by filing a grievance appeal with the Secretary of the Florida Department of Corrections and attaching the contested grievances. *Id.* §§ 33-103.007(1) and (4), 33-103.011(c). If an appeal is filed late or is otherwise out of compliance, it is returned to the prisoner without further processing, and the prisoner must refile a corrected version. *Id.* §§ 33-103.014(1), 33-103.011, 33-103.014(2).

C. *Arias's Grievances*

On appeal, Arias identifies four complaints regarding his placement in the Florida prison system that could plausibly count as grievances: 1) his verbal request to Hays a few days after arriving at Desoto on June 21, 2016; 2) his written request to Hays from the infirmary (after he had been attacked) on August 26; 3) a written grievance submitted to the assistant warden on August 31; and 4) a written

---

[2] For certain emergency and other grievances, a prisoner may skip step one and instead file a formal grievance with the warden's office or a direct grievance with the Florida Secretary of the Department of Corrections. *See* Fla. Admin. Code §§ 33-103.005(1), 33-103.002(5), 33-103.006(3). Different time limits apply in those circumstances. *See id.* § 33-103.011(1)(b).

grievance submitted to the Secretary of the Florida Department of Corrections on September 5.  The district court rejected the first complaint because, contrary to the Florida Administrative Code requirement that informal grievances be written, it was verbal, and because "the alleged failure to respond to Plaintiff's request for protection is the source of later grievances and so cannot also be considered a grievance in and of itself."  It rejected the second complaint because it was merely "a request for protection" and "not an informal grievance directed at a third-party complaining of [Hays's] failure to respond to a request for protection," and because Arias "did not check the box indicating the request was an informal grievance" as the Florida Administrative Code requires.  *See Woodford v. Ngo*, 548 U.S. 81, 83–84 (2006).

The district court construed Arias's third complaint as a formal grievance—that is, step two in the process.[3]  Arias claims that the Institutional Classification Team verbally informed him on September 1—the day after his third complaint—that they could transfer him to another facility "without placing him in a Protective Management Unit."  So he filed his fourth complaint with the Florida Secretary of the Department of Corrections on September 5, and the district court accepted

---

[3] Arias's grievance arguably qualified as an emergency one—which would allow him to skip the first step, filing an informal grievance—because emergency grievances include "those matters which, if disposed of according to the regular time frames, would subject the inmate to substantial risk of personal injury or cause other serious and irreparable harm to the inmate." Fla. Admin. Code § 33-103.002(4).

Arias's characterization of that fourth filing as an appeal from the third one. But the district court found that the appeal did not satisfy the PLRA's exhaustion requirement because it was "returned without action" and the response indicated that Arias "did not comply with the procedures of [the Florida Administrative Code] because he did not wait the time allotted to the [Florida Department of Corrections] to provide him with a response to the formal grievance before filing an appeal." In fact, Arias had been approved for placement in a protective management unit on September 2, and he was actually transferred on September 9. The district court thus concluded that Arias "did not exhaust his administrative remedies because his grievance was never denied."

We agree that Arias failed to exhaust his failure-to-protect claim against Hays. A prisoner must exhaust each claim that he seeks to present in court. *See Jones*, 549 U.S. at 219–20 ("All agree that no unexhausted claim may be considered.") The claim that Arias suffered an Eighth Amendment violation when Hays failed to protect him is distinct from the claim that he should be transferred to a protective management unit. Arias's filings addressed the latter—indeed, he ultimately received precisely the relief that he requested—but not the former. It would subvert the PLRA's purpose of granting prison authorities "time and opportunity to address complaints internally before allowing the initiation of a

9

federal case," *Porter*, 534 U.S. at 525, if a prison could grant all the relief a prisoner asked for and yet still find itself subject to suit.

Our decision in *Parzyck v. Prison Health Services, Inc.*, 627 F.3d 1215 (11th Cir. 2010), is not to the contrary. There, we explained that "[n]othing in the FDOC's grievance procedures requires inmates to file new grievances addressing every subsequent act by a prison official that contributes to the continuation of a problem already raised in an earlier grievance." *Id.* at 1219. Here, Arias's injuries were not simply "the continuation of a problem already raised"; they were a separate, even if related, problem. None of Arias's grievances pursued a claim against Hays for failing to protect him, as distinct from requesting protection itself.

\*       \*       \*

Because Arias failed to exhaust his Eighth Amendment claim against Hays under the procedures established for Florida prisoners, the district court's decision is **AFFIRMED.**

10