[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11177
Non-Argument Calendar

_____

D.C. Docket No. 5:15-cv-00375-TJC-PRL

SAMUEL ROY ABRAM,

Plaintiff-Appellant,

versus

DAVID LEU,
Captain of Security,
A. CLUNTZ,
SIS Agent,
K. BARKER,
SIS Lieutenant,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 25, 2021)

Before ROSENBAUM, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

Samuel Abram, proceeding *pro se*, appeals the dismissal without prejudice of his action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), relating to the alleged confiscation of certified mail and other materials from him in October 2013 and his subsequent transfer, for failure to exhaust available administrative remedies. He argues that he was not required to exhaust the Federal Bureau of Prisons' ("BOP") administrative remedies because they were unavailable since prison officials refused to provide him with the forms necessary to initiate the grievance process.

## I.

We review a district court's interpretation and application of the Prison Litigation Reform Act's ("PLRA") exhaustion requirement *de novo*. *Johnson v. Meadows*, 418 F.3d 1152, 1155 (11th Cir. 2005). Additionally, we review a district court's factual findings for clear error. *Whatley v. Smith*, 802 F.3d 1205, 1209 (11th Cir. 2015). We may affirm on any ground supported by the record. *Big Top Koolers, Inc. v. Circus-Man Snacks, Inc.*, 528 F.3d 839, 844 (11th Cir. 2008).

The PLRA requires prisoners who wish to challenge some aspect of prison life to exhaust all available administrative remedies before resorting to the courts. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see* 42 U.S.C. § 1997e(a); *Alexander v. Hawk*, 159 F.3d 1321, 1324–25 (11th Cir. 1998) (holding that the PLRA's exhaustion requirement applies to federal prisoners bringing *Bivens* actions).

2

Exhaustion is mandatory under the PLRA, and unexhausted claims cannot be brought in court. *Jones v. Bock*, 549 U.S. 199, 211 (2007). The failure to exhaust administrative remedies requires that the action be dismissed. *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2005).

To satisfy the exhaustion requirement, a prisoner must complete the administrative process in accordance with the applicable grievance procedures set by the prison. *Jones*, 549 U.S. at 218; *Johnson*, 418 F.3d at 1156. In other words, "[t]he PLRA requires 'proper exhaustion' that complies with the 'critical procedural rules' governing the grievance process." *Dimanche v. Brown*, 783 F.3d 1204, 1210 (11th Cir. 2015). Procedurally defective grievances or appeals are not adequate to exhaust. *Woodford v. Ngo*, 548 U.S. 81, 93-95 (2006). As a result, an untimely grievance that is rejected as such by prison officials does not satisfy the PLRA's exhaustion requirement. *Johnson*, 418 F.3d at 1156–59.

Although proper exhaustion is generally required, a remedy must be "available" before a prisoner is required to exhaust it. *Turner v. Burnside*, 541 F.3d 1077, 1082, 1084 (11th Cir. 2008). An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief. *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016).

Defendants in this Circuit may raise lack of exhaustion in a motion to dismiss. *Whatley*, 802 F.3d at 1209. Deciding a motion to dismiss for failure to exhaust

3

administrative remedies is a two-step inquiry. *Id.* (citing *Turner*, 541 F.3d at 1081–82). District courts first should compare the factual allegations in the motion to dismiss and those in the prisoner's response and, where there is a conflict, accept the prisoner's view of the facts as true. *Id.* "The court should dismiss if the facts as stated by the prisoner show a failure to exhaust." *Id.* Second, if dismissal is not warranted at the first stage, the court should make specific findings to resolve disputes of fact, "and should dismiss if, based on those findings, defendants have shown a failure to exhaust." *Id.*

## II.

In this case, the defendants filed a motion to dismiss the complaint for lack of exhaustion. They asserted that, as a federal prisoner, Abram was subject to the BOP's administrative-remedy program, codified at 28 C.F.R. §§ 542.10, *et seq.*, under which a prisoner is required to (1) submit an institutional-level request, usually through both an "informal resolution" request (typically using form BP-8) and a formal request (form BP-9), within 20 days following the incident ; (2) appeal to the Regional Director (form BP-10); and (3) appeal to the General Counsel (form BP-11). *See* 28 C.F.R. §§ 542.13–542.15.

The defendants submitted evidence showing that on February 10, 2014, Abram first filed a grievance (number 767898-F1) relating to the basis for his *Bivens* claim, that this grievance was denied for being untimely and for improperly raising

4

more than one issue, and that Abram failed to appeal the denial of this request to the regional or central-office level. Further, according to the defendants, Abram filed another grievance (number 771756-R1) on March 17, 2014, but it was rejected as improperly filed at the regional level rather than the institutional level, and Abram failed to reinitiate the grievance at the institutional level.

Abram responded that the administrative-grievance procedure was not available to him because prison officials refused to provide him with the forms (BP-8 and BP-9) necessary to initiate the grievance process. He claimed that, after he was transferred to the Special Housing Unit ("SHU") following the confiscation of his materials on October 28, 2013, the unit or case manager never visited him, so he could not request the forms required to timely initiate the grievance process. In addition, he submitted an affidavit from another prisoner who stated that, while housed in the SHU, he witnessed Abram requesting BP-8 and BP-9 forms "to no avail." It appears that Abram obtained the required form by February 10, 2014, when he initiated the grievance process.

Applying the two-step process for resolving exhaustion issues, *see Whatley*, 802 F.3d at 1209, the district court first found that dismissal of Abram's claims for lack of exhaustion was not warranted, accepting his view of the facts as true. Turning to the second step of the analysis, the court concluded that, even assuming prison officials refused to timely provide Abram with the required forms, Abram

was still required to comply with the grievance procedure by either resubmitting the grievance or appealing its denial. The court reasoned that to "properly exhaust his administrative remedies," Abram had "to appeal the Warden's unsatisfactory response that his institutional-level grievance was untimely." Finally, the court found that the evidence refuted any claim that Abram did not have access to the forms for appealing the denial of his February 10, 2014, grievance. The court then denied Abram's motion for reconsideration.

## III.

BOP regulations require prisoners to initiate the administrative-grievance procedure using the "appropriate form," which must be obtained from prison staff. 28 C.F.R. § 542.14(a). So if prison staff refuses to provide the form necessary to initiate the grievance procedure, as Abram alleges occurred here, it is difficult to say that the procedure is "available" to the prisoner. Other circuits agree. *See Hill v. Snyder*, 817 F.3d 1037, 1041 (7th Cir. 2016) ("[E]xhaustion is not required when the prison officials responsible for providing grievance forms refuse to give a prisoner the forms necessary to file an administrative grievance."); *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004) ("If prison employees refuse to provide inmates with those forms when requested, it is difficult to understand how the inmate has any available remedies."); *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003) (suggesting that remedies were not available where "prison officials denied [the prisoner] the

6

necessary grievance forms"); *Miller v. Norris*, 247 F.3d 736, 738–40 (8th Cir. 2001) (holding that allegations of prison officials' failure "to respond to the requests for grievance forms" were sufficient to raise a genuine issue of fact as to the availability of administrative remedies).

In *Bryant v. Rich*, however, we indicated that temporary obstacles that prevent the submission of a timely grievance—such as a lockdown, a transfer, or a refusal by prison officials to provide the necessary forms—do not make administrative remedies unavailable where prisoners may "request consideration of untimely grievances for good cause." 530 F.3d 1368, 1373 (11th Cir. 2008). One of the plaintiffs in *Bryant*, a Georgia state prisoner, alleged that the prison's grievance procedure was unavailable to him because prison officials denied him the necessary forms and then transferred him to another institution. *Id.* Although we recognized that a grievance filed after the prisoner's transfer "would have been untimely," we noted that "the relevant grievance procedures provide inmates with the opportunity to request consideration of untimely grievances for good cause." *Id.*

Given that opportunity, we concluded that the prisoner "could have exhausted his administrative remedies by filing a grievance at [the new institution] and then by showing good cause for its tardiness." *Id.* And while there was some evidence that the prisoner had been denied the required forms at the new institution, which presented a genuine issue of fact as to the availability of the remedies, we found that

the district court's contrary finding was adequately supported by the record. *Id.* at 1373, 1377–78. We therefore affirmed the dismissal of the prisoner's complaint for lack of exhaustion. *Id.* at 1378.

*Bryant* controls our resolution of this case. While Abram's case concerns the BOP's administrative remedies, not the Georgia administrative remedies at issue in *Bryant*, the BOP regulations similarly give prisoners the opportunity to request consideration of an untimely grievance for a "valid reason" (instead of "good cause"). *See id.* at 1373. Specifically, 28 C.F.R. § 542.14(b), titled "Extension," states that "[w]here the inmate demonstrates a valid reason for delay, an extension in filing time may be allowed. In general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame." A refusal to provide the forms necessary to initiate the grievance process appears to qualify as such "a situation which prevented the inmate from submitting the request within the established time frame."

So, although Abram, like the prisoner in *Bryant*, may have been prevented from filing a timely grievance due to prison officials' refusal to provide him the necessary forms, the record reflects that he "could have exhausted his administrative remedies by filing a grievance . . . and then by showing good cause for its tardiness." *Bryant*, 530 F.3d at 1373. We know this because Abram filed an untimely grievance related to the grounds for his *Bivens* claim, stemming from events in October 2013,

8

on February 10, 2014.  But there is no indication that he presented a "valid reason" for its tardiness or otherwise sought an extension of time as permitted under the grievance procedure.[1]  *See id.*  Thus, Abram failed to exhaust his available administrative remedies and dismissal was proper.[2]

## IV.

For these reasons, we affirm the dismissal of Abram's complaint for failure to exhaust administrative remedies as required by the PLRA.

**AFFIRMED.**

---

[1] In addition, throughout the proceedings in this case, Abram has given no indication that he was unaware of or misinformed about the BOP's prison-grievance procedure.

[2] The record reflects that in 2015 Abram filed other grievances related to the ground for his current *Bivens* claim, but the district court correctly concluded that these grievances were not timely or otherwise adequate to exhaust his administrative remedies.  *See Dimanche*, 783 F.3d at 1210; *Johnson*, 418 F.3d at 1156–59.