[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-13653

Non-Argument Calendar

_____

JUAN HERNANDEZ,

                                        Plaintiff-Appellant,

*versus*

GEO GROUP,
FLORIDA DEPARTMENT OF CORRECTIONS,
CENTURION LLC,
WELLPATH LLC,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:22-cv-00396-WS-MAF

_____

Before WILSON, LUCK, and BRASHER, Circuit Judges.

PER CURIAM:

Juan Hernandez was attacked by another inmate while imprisoned at Graceville Correctional Facility. Because of his injury, Hernandez alleges he suffered significant hearing loss. So he sued the entities that operated the prison and the medical units that treated him.

Because we conclude that Hernandez failed to exhaust his administrative remedies as to the Department of Corrections and GEO Group, and that he failed to state a claim against Wellpath and Centurion, we affirm the district court's dismissal of the complaint.

**I.**

Juan Hernandez filed a lawsuit against GEO Group, Wellpath, Centurion, and the Florida Department of Corrections, alleging various claims stemming from a 2018 prison altercation, in which another inmate struck Hernandez on the back of the head. The attack occurred at GEO-operated Graceville CI whose medical unit was operated by Wellpath. Hernandez was later transferred to

different prison facilities whose medical units were operated by Centurion.

Hernandez alleges that the defendants failed to protect him or provided insufficient medical care, resulting in hearing loss in his left ear. The district court dismissed his claims against GEO and the Department of Corrections for failing to properly exhaust his administrative remedies. And although the court determined that Hernandez exhausted his administrative remedies as to Wellpath and Centurion, it dismissed those claims because Hernandez failed to plead sufficient allegations to hold those parties liable under 42 U.S.C. § 1983.

Hernandez timely appealed.

## II.

We review a district court's application of 42 U.S.C. § 1997e(a)'s exhaustion requirement *de novo*, but we review its factual findings relating to exhaustion for clear error. *Varner v. Shepard*, 11 F.4th 1252, 1257 (11th Cir. 2021). "Otherwise, we accept as true the facts as set forth in the complaint and draw all reasonable inferences in the plaintiff's favor." *Id.* (cleaned up).

We also review *de novo* a district court's grant of a motion to dismiss for failing to state a claim, continuing to construe the allegations in the complaint in the light most favorable to the plaintiff. *Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1305 (11th Cir. 2009).

### III.

Hernandez argues that the district court erred in finding that Hernandez failed to exhaust his administrative remedies as to the Department of Corrections and GEO. He also argues that he sufficiently alleged § 1983 claims against Wellpath and Centurion under multiple theories of municipal liability. We will address each argument in turn.

### A.

Hernandez filed an Americans with Disabilities Act claim against the Florida Department of Corrections for failing to provide him with a hearing aid and cane. *See* 42 U.S.C. §§ 12131–12132. The district court dismissed the claim, determining that Hernandez failed to exhaust his administrative remedies against the Department.

The Prisoner Litigation Reform Act requires prisoners to exhaust available administrative remedies before bringing an action "under section 1983 of this title, or any other Federal law." 42 U.S.C. § 1997e(a). Therefore, if "a state provides a grievance procedure for its prisoners," an inmate "must file a grievance and exhaust the remedies available under that procedure before pursuing" a lawsuit. *Varner*, 11 F.4th at 1257 (quotation marks omitted). Otherwise, PLRA defendants can raise an inmate's failure to exhaust as an affirmative defense. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). The PLRA "entirely eliminates judicial discretion and instead

mandates strict exhaustion." *Johnson v. Meadows*, 418 F.3d 1152, 1155 (11th Cir. 2005).

To exhaust his administrative remedies, a Florida inmate must complete a three-step process: (1) file an informal grievance with a designated prison staff member; (2) file a formal grievance with the facility's warden; and (3) submit an appeal to the Secretary of the Florida Department of Corrections. *See Chandler v. Crosby*, 379 F.3d 1278, 1288 (11th Cir. 2004). In certain limited circumstances, an inmate can file a grievance directly to the Secretary, but he "must clearly state the reason for not initially bringing the complaint to the attention of institutional staff and by-passing the informal and formal grievance steps of the institution or facility." Fla. Admin. Code Ann. r. 33-103.007(3)(a)(2).

Hernandez first argues that he was not required to grieve at the institutional level. He explains that his grievance to the Secretary included a statement that incorporated the grievance into his medical file that the Department maintained. Therefore, he claims that he simultaneously filed both an informal grievance with the Warden, by incorporating the grievance into the Department's files, and a formal one to the Secretary. Even assuming the inclusion of a statement of incorporation could constitute a simultaneous filing—and that a simultaneous filing would satisfy the three-step administrative process—Hernandez's statement of incorporation had nothing to do with his claims against the Department. The full text of the statement to the Secretary reveals that Hernandez incorporated the statement of facts as to his claim against

Centurion—not his ADA claim against the Department. Therefore, the district court was correct to conclude that Hernandez failed to grieve at the institutional level against the Department.

Hernandez next argues that, even if he failed to file at the institutional level, he was not required to do so because his grievance to the Secretary "clearly state[d] the reason for not initially bringing the complaint to the attention of institutional staff." Fla. Admin. Code Ann. r. 33-103.007(3)(a)(2). Specifically, Hernandez avers that his statement explained that "he believed the DOC's medical staff was being 'misleading, untruthful, and unprofessional.'" But once again, Hernandez quotes the record out of context. The full text of his appeal to the Secretary reveals that he actually said: "My complaint is based on the misleading, untruthful and unprofessionalism of Dr. Naseri"—a Centurion physician. Therefore, because these quotations from the record had nothing to do with his ADA claim against the Department, the district court did not err in concluding that Hernandez failed to state his reason for filing directly with the Secretary.

Lastly, Hernandez argues that the Department itself failed to comply with the PLRA by not making the grievance procedures known and available to Hernandez and by failing to specify the reason his grievance was returned without action. He explains that because "the PLRA only requires prisoners to exhaust their 'available' remedies," *see* 42 U.S.C. § 1997e(a), he properly grieved against the Department. Again, the record contradicts Hernandez's arguments. Not only do the Department's rules require inmates to

receive training about the grievance process, but Hernandez himself knew how to access those procedures because he filed multiple other grievances with his institution. Additionally, the Secretary's response to the grievance stated the reason the appeal was returned to him without action and provided a detailed explanation about how to cure the deficiency and the deadline to do so. Hernandez failed to follow the instructions to cure that deficiency.

Because Hernandez has not sufficiently alleged that the Department denied his access to the grievance process at the institutional level, the district court was correct to dismiss Hernandez's ADA claim against the Department of Corrections.

*B.*

GEO operated the Graceville Correctional Facility where the inmate-on-inmate assault occurred. Hernandez filed claims against GEO, alleging that GEO failed to protect him by not effectively supervising and searching inmates for contraband and that GEO was deliberately indifferent to his safety. Hernandez argues on appeal that he was unable to exhaust his administrative remedies as to these claims because Graceville officers failed to provide him with the necessary forms before he was transferred to a non-GEO facility. Specifically, he alleges that officers told him that they would provide him with the relevant paperwork but never did. The district court dismissed the claim, concluding that even if Hernandez's efforts to file a grievance were obstructed, he could have filed them after he was transferred but failed to do so.

"Proper exhaustion demands compliance with an agency's deadlines" as a pre-condition to filing in federal court. *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). The only exception to an inmate's obligation to exhaust is if the remedy is unavailable, such as when prison staff thwarts an inmate "through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016). A remedy is also unavailable if it "is unknown and unknowable," meaning the procedures could not have been "discovered through reasonable effort." *Goebert v. Lee County*, 510 F.3d 1312, 1322, 1324 (11th Cir. 2007).

The Florida Department of Corrections permits inmates to file untimely grievances if they can demonstrate "to the satisfaction of the reviewing authority . . . that it was not feasible to file the grievance within the relevant time periods and that the inmate made a good faith effort to file in a timely manner." Fla. Admin. Code R. 33-103.011(2). Its procedures also permit inmates to file grievances about incidents that occurred at different institutions. *See id*. 33-103.015(4). Inmates are required to receive periodic training on the grievance procedures, and prisons are required to provide access to the law library containing copies of the rules and procedures. *Id*. 33-103.003(2); 33-501.301(1), (3), (5)(b).

Accepting as true that Graceville officers obstructed Hernandez's access to grievance forms, the record confirms that he nevertheless failed to file a grievance after that obstruction was removed when he was transferred to another facility. In *Bryant v. Rich*, we rejected an inmate's unavailability argument, concluding

that because the inmate "was later transferred to another prison" where the obstruction was removed, "he could have filed an out-of-time grievance and then shown good cause for its untimeliness." 530 F.3d 1368, 1379 (11th Cir. 2008). The same analysis applies here. The Department's procedures permitted Hernandez to seek leave to file an untimely grievance. Under Hernandez's allegations, that procedure likely would have permitted him to grieve after he was transferred from Graceville. And that procedure was knowable through both the law library and Hernandez's periodic trainings on the grievance procedures, as reflected in the record. Therefore, because there was a knowable procedure that permitted Hernandez to seek leave to file an out-of-time grievance after arriving at his new facility, and because Hernandez failed to do so, he did not properly exhaust his available administrative remedies.

Hernandez next argues that one of his later-filed grievances properly exhausted his claims against GEO because it referenced the attack that occurred at Graceville. But that grievance concerned his medical care and did not specifically raise the issue of failing to protect. *See Chandler*, 379 F.3d at 1287 (explaining that inmates must exhaust each claim they seek to present in court). Rather, Hernandez mentions the attack in his complaint only as background to his medical history. Because that filing concerned deficient medical care, and not his current claims against GEO, the district court did not clearly err in finding that the grievance failed to raise the specific issue addressed in the complaint. Accordingly, the district court was correct to dismiss Hernandez's claims against GEO.

### C.

Because Hernandez's arguments as to Wellpath and Centurion are identical, we address them together. Hernandez argues several theories of municipal liability in an attempt to state a claim under 42 U.S.C. § 1983 against those entities. But because he failed to allege sufficient facts under any of his theories, the district court was correct to dismiss his claims.

Wellpath operated Graceville's medical unit where Hernandez received treatment after his assault. Centurion operated the medical units at the facilities Hernandez was transferred to after leaving Graceville. Hernandez alleges that, through their employees, Wellpath and Centurion violated his Eighth Amendment rights by acting with deliberate indifference to his serious medical needs. The district court concluded that Hernandez failed to state claims under section 1983 because he did not allege facts establishing municipal liability.

To survive a motion to dismiss, a plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face," meaning that the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A court need not take a plaintiff's allegations as true if they are "[t]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

When private entities like Wellpath and Centurion contract with a state to provide medical care to inmates, they become "the functional equivalent of the municipality" because they perform a function traditionally and exclusively within the state's prerogative. *Buckner v. Toro*, 116 F.3d 450, 451–52 (11th Cir. 1997). Municipalities are liable only if their policies or customs effectuated a constitutional violation because section 1983 does not allow for respondeat superior liability. *Monell v. Dep't Soc. Servs.*, 436 U.S. 658, 690, 694. A plaintiff can allege municipal liability by claiming that "an injury was inflicted by a government's 'lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121–22 (1988) (quoting *Monell*, 436 U.S. at 694). And "an unconstitutional government policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." *Id.* at 123.

To state a section 1983 claim against Wellpath and Centurion, Hernandez needed to allege that their employees acted pursuant to an official policy or that the employees had final policymaking authority and their medical decisions constituted policymaking. Because he concedes that neither entity had an official policy, he argues that his treating physicians acted as final policymakers during the course of his medical care. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).

Hernandez's amended complaint failed to include any facts alleging that his providers functioned as final policymakers. The

fact that the medical staff had discretion to make medical decisions does not mean that Wellpath and Centurion had delegated final policymaking authority to them. Even if the employees were not required to consult with a superior before making medical decisions, Hernandez's cursory allegations failed to establish that they had unfettered discretion, especially on matters of policy. *See Praprotnik*, 485 U.S. at 128. Nor does Hernandez identify any specific policy created by the staff that caused his medical complaints. Hernandez cannot state a section 1983 claim by reciting a legal conclusion that the employees were delegated final policymakers. *See Iqbal*, 556 U.S. at 678 (explaining that a "formulaic recitation of the elements of a cause of action will not do"). Because "[m]unicpal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered," Hernandez failed to state section 1983 claims against Wellpath and Centurion. *Pembaur*, 475 U.S. at 481.

Hernandez offers two very brief alternative arguments. Even if the medical staff were not final policymakers, Hernandez argues that Wellpath and Centurion were deliberately indifferent to their staff's recurring constitutional violations, or, in the second alternative, the staff's widespread violations amounted to a custom of which the companies must have been aware. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989). In the few sentences Hernandez dedicates to these arguments, he fails to cite to any allegation in his amended complaint asserting that there were similar constitutional violations with other prisoners or that the violations occurred because of a lack of staff training. *See Weiland v. Palm*

23-13653            Opinion of the Court            13

*Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1328–29 (11th Cir. 2015). Neither does he allege that Wellpath or Centurion had a custom or practice of permitting widespread constitutional violations. *See Craig v. Floyd County, Georgia*, 643 F.3d 1306, 1312 (11th Cir. 2011) (concluding that there is no custom of constitutional violations when a plaintiff "relies on his own experience, which is, at most, proof of a single incident of unconstitutional activity." (cleaned up)).

Hernandez attempts to hold Wellpath and Centurion vicariously liable for their employees' medical decisions. Because section 1983 does not allow for such claims, the district court was correct to dismiss them.

**IV.**

**AFFIRMED.**